GLOBE MILLING COMPANY *vs.* MINNEAPOLIS ELEVATOR COMPANY.

July 21, 1890.

**Sale—Fraud—Bona Fide Purchaser.**—Rule in *Cochran* v. *Stewart*, 21 Minn. 435, that in case of the sale and delivery by the owner of personal property, although he may have been induced to make it by fraud on the part of the vendee, the latter may convey a good title to a *bona fide* purchaser, does not apply to a case where the second purchaser does not rely on, or know of, any *indicia* of title with which the first vendor may have invested the first purchaser.

**Conditional Sale—Waiver.**—Certain evidence considered, and *held* not sufficient to show a waiver, by a vendor of personal property for cash on delivery, of payment of the purchase price as a condition of the title passing.

**Contract—Evidence of Usage.**—A local usage cannot be proved to contradict a contract, nor to subvert a well-settled rule of law.

Appeal by plaintiff from a judgment of the district court for Hennepin county, where the action was tried by *Hooker*, J., (a jury being waived,) and a dismissal ordered at the close of the evidence for plaintiff.

*W. H. Norris*, for appellant.

*Shaw & Cray*, for respondent.

GILFILLAN, C. J. Action for the conversion of 500 bushels of wheat. At the trial, after the plaintiff rested, the court dismissed the action. August 28, 1888, defendant contracted to sell and deliver to D. C. Moak & Co. four car-loads No. 1 hard wheat, the specific wheat not then being ascertained; but it was to be delivered in the future out of the mass of wheat in the defendant's elevator. August 31st, Moak & Co. contracted to sell and deliver to Griffiths,

Marshall & Co. five car-loads of similar wheat, no specific wheat being ascertained; and on the same day the latter firm contracted to sell and deliver to plaintiff five car-loads of similar wheat, no specific wheat being ascertained. The plaintiff was doing business at Watertown, Wis.; the defendant was operating an elevator in Minneapolis; and D. C. Moak & Co. and Griffiths, Marshall & Co. were firms engaged in buying and selling grain in the same place. September 13th, defendant loaded four cars of the Chicago, Milwaukee & St. Paul Railway Company with No. 1 hard wheat at its elevator, including that containing the wheat in controversy. The cars stood on a railroad track that belonged to defendant, or to the St. Paul, Minneapolis & Manitoba Railway Company; but to which it belonged we consider immaterial. The latter company was accustomed to switch or transfer cars loaded with wheat at the elevator to whatever point on its transfer tracks the defendant might designate. The direction to switch or transfer was by means of what is called a "switching order," in writing or partly in writing and partly in print, signed by defendant and addressed to said railway company, requesting it to switch the cars designated in it to the place specified in it. On the 13th, after loading the four cars, the defendant issued its switching order, designating each car by its number, and an abbreviation indicating to what company it belonged, stating its contents, to wit, wheat; the shipper, to wit, defendant; the consignee, to wit, D. C. Moak & Co.; and its destination, to wit, the yard of the Chicago, Milwaukee & St. Paul Railway Company. Pursuant to this order the cars were taken by the switching company; and, although the evidence is not direct to the point, there can be little doubt that, at about 5 o'clock P. M. on the same day, it reached the yard of the Chicago, Milwaukee & St. Paul Railway Company. In this yard were several tracks, two of which were used by the St. Paul, Minneapolis & Manitoba Railway Company for leaving cars switched by it, intended to pass over the Chicago, Milwaukee & St. Paul Railway; and on these tracks the latter company took such cars, provided that, on inspection, they were found to be in good order, but not otherwise. There is nothing to show that of the four cars thus switched the one having the wheat here in controversy ever got further than one or

the other of these two tracks, or that it was ever inspected or taken by the Chicago, Milwaukee & St. Paul Railway Company. Nothing further appears in respect to it until the 19th, when it was back at the elevator, and the wheat was then unloaded into the elevator. It is to be presumed that on that day the defendant caused the car to be brought back from the place where it was left by the switching company, and to be unloaded. On the 14th, defendant made out a bill against D. C. Moak & Co. for the four car-loads, and presented it to them on that day, and again on the 15th, payment of which was both times refused,—the first time, on the ground that they had not sampled the wheat; the second time, on the ground that it had not been inspected. On the 17th the bill was again presented, with the bill for switching; and they gave their checks for them, and the collector who presented them receipted the bills. On presentation the checks were dishonored for want of funds. On the 14th, D. C. Moak & Co. presented a bill for the wheat in controversy to Griffiths, Marshall & Co., describing it as in the car in question, and the bill was paid; and the former gave the latter a written order on the agent of the Chicago, Milwaukee & St. Paul Company for the wheat. On the same day the latter firm sent to plaintiff a shipping-bill for three car-loads of wheat, including that in question, over the Chicago, Milwaukee & St. Paul Railway, and drew a draft for the price, which was paid on the 18th.

There was no express evidence whether the sale from defendant to D. C. Moak & Co. was for cash or on time. It must be presumed to have been for cash on delivery.

There were some rulings of the court below excluding evidence offered by plaintiff assigned as errors; but as the evidence, had it been admitted, would not have materially varied the facts as we have stated them, it is unnecessary to consider those rulings, except one hereafter referred to.

Plaintiff claims that the case comes within the rule laid down in *Cochran* v. *Stewart,* 21 Minn. 435, that in case of the sale and delivery by the owner of personal property, although he may have been induced to make such sale and delivery by fraudulent acts and representations of the vendee, the latter may convey a good title to a

*bona fide* purchaser,—a rule founded on the proposition that, of two persons, one of whom must suffer by the wrongful act of a third person, he who has put it in the power of such third person to do the wrong must be the sufferer. The only way in which the rule could apply to the case would be upon the fact that, without exacting payment of the price, the defendant delivered the wheat to D. C. Moak & Co., and that, in what they did, Griffiths, Marshall & Co. and the plaintiff relied upon that delivery. This not only assumes the fact of delivery, the very matter here in controversy, but also that Griffiths, Marshall & Co. and plaintiff knew of, and acted on the faith of, the delivery, of which there is no evidence. It is quite manifest that they trusted, not in anything done by defendant, but in what was done and said to them by D. C. Moak & Co. In other words, they did not rely on any *indicia* of title with which defendant invested that firm.

The case comes to the question, was there a delivery of the wheat? And, as it was a cash sale, payment of the price being a condition of the vendee's right to a delivery, was there a waiver of that condition, so that the vendor, after what had been done towards a full manual delivery, could not repossess itself of the wheat? For the giving of the check, there being no express agreement that it was, whether paid or not, to be a payment for the wheat, is to be regarded as taken in payment only in the event of its being paid on due presentation. As it was not so paid, it did not operate as payment.

There is no claim of any evidence of express waiver, or of any waiver except such as might be implied from the circumstances and the acts of the parties. To constitute a waiver, there must be, not only an act of delivery, but an intent not to insist on immediate payment as a condition of the title passing. Of course, an act of delivery which would pass the title upon a sale without condition might not have that consequence when the sale is conditional. Thus, upon an unconditional sale, a delivery "free on board" to the carrier of the purchaser, for transportation to him, would pass the title. But such would not be the effect of such a delivery where, by the contract of sale, the goods are to be paid for, or notes or security given, upon their arrival at their place of destination. *Pond Machine*

*Tool Co.* v. *Robinson,* 38 Minn. 272, (37 N. W. Rep. 99.) All that is claimed as tending to prove an implied waiver of payment is that, for the purpose of filling its contract of sale, the defendant loaded the wheat into cars indicated, it is to be presumed, by the purchasers, caused the cars to be transferred, naming the purchasers as consignees, from the elevator to the yard of the Chicago, Milwaukee & St. Paul Company, and there left them standing on a track used by the transferring company, and noting in the bill made out for the price of the wheat that it was to be put "free on board." These facts must be taken in connection with what was done with the bill for the price of the wheat. Had that gone along with the wheat to the yard, and a demand for its payment been made on arrival there, no one, we think, could suggest that payment concurrent with delivery was waived. But that was impracticable. There was no one at the yard authorized to pay the bill, or on whom a demand for its payment could be made. Such demand could be made only upon the purchasers personally, or at their place of business. Payment was so demanded with due business promptness, and the demand was repeated twice, without unreasonable delay. In view of this persistent effort to obtain immediate payment, no finding, upon the evidence in the case, of a waiver of immediate payment as a condition of the title passing, could be sustained.

The ruling of the court below excluding evidence offered by appellant, which we have reserved for consideration, arose upon two offers to prove a long-established and general usage in the grain trade at Minneapolis. The offers were too long to be repeated *verbatim* here; but, stating the usage as the offers are epitomized in the appellant's brief, it was, in substance, this: that when cars are loaded, consigned, transferred, and treated as the cars in this case were, the grain is regarded, from the moment the loading is completed, as the exclusive property, and in the exclusive possession and control, of the purchaser, salable by him, and purchasable by any other person, free from all rights and claims by the elevator company. The usage of which proof was so offered was only local. According to it, under the circumstances stated, the title was regarded as having passed, whatever might be the agreement of the parties.

or the general rules of law applicable to the facts of the case. If this is not what is claimed for it, then proof of it would not have been of any benefit to the appellant, and the exclusion of the evidence did not prejudice it; for if, under the usage, the right of a seller for cash to reclaim the property notwithstanding such a delivery still existed, then proof of the usage would not have made the case different from what it is without such proof. But a local usage cannot be proved to contradict a contract. *Paine* v. *Smith,* 33 Minn. 495, (24 N. W. Rep. 305;) *Barnard* v. *Kellogg,* 10 Wall. 383; 2 Pars. Cont. 535; Tayl. Ev. 943; *Blackett* v. *Royal Exchange Assurance Co.,* 2 Cromp. & J. 244; *Brown* v. *Foster,* 113 Mass. 136. If, by the contract for the sale of this wheat, it was for cash on delivery, the usage could not make it a sale on credit. Also, such a usage cannot be allowed to subvert a well-settled rule of law. *Osborne* v. *Nelson Lumber Co.,* 33 Minn. 285, (22 N. W. Rep. 540;) *Barnard* v. *Kellogg, supra; Thompson* v. *Ashton,* 14 John. 316; *Dickinson* v. *Gay,* 7 Allen, 29; *Dodd* v. *Farlow,* 11 Allen, 426; *Frith* v. *Barker,* 2 John. 327; *Woodruff* v. *Merchants' Bank,* 25 Wend. 673; *Beirne* v. *Dord,* 5 N. Y. 95; *Simmons* v. *Law,* *42 N. Y. 217; *Coxe* v. *Heisley,* 19 Pa. St. 243; *Wetherill* v. *Neilson,* 20 Pa. St. 448. There is no rule of law better settled than that, upon a cash sale, the seller, if he have not waived his right to payment as a condition of the title passing, may reclaim the property, if the purchaser refuse or fail to pay. Proof of the usage was rightly excluded.

Judgment affirmed.