## E. L. WELCH COMPANY v. LAHART ELEVATOR COMPANY.[1]

December 10, 1909.

Nos. 15,950—(4).

**Sale of Grain for Future Delivery — Passing of Title.**

In the ordinary course of business pursuant to a sale on the floor of the Minneapolis board of trade of grain for future delivery, after inspection, the seller notifies the buyer of the application to the sale of the grain in the cars on the tracks in the yards at Minneapolis, and, the elevator having been designated by the buyer, the seller gives switching orders to have the

[1]Reported in 123 N. W. 821.

cars sent over the proper transfer tracks to the elevator, the wheat is there unloaded and weighed, and a bill of the amount due sent to the buyer, who is required to pay the cash. *Held*, it is a question of fact whether the parties to such a transaction intend that the title shall not pass until payment is made, or passes at the time of giving the notices of application. In this case it does not conclusively appear from the evidence that title was transferred by giving the notices of application.

Action in the district court for Hennepin county to recover $5,339.45, the value of certain wheat, which it was alleged plaintiff owned on May 13, 1907, and defendant then converted. The answer was a general denial. The facts are stated in the opinion. At the close of the testimony, defendant moved for a directed verdict on the ground that the wheat belonged to defendant on May 13, 1907, and had belonged to it ever since April 23 or April 24, 1907. The court, Simpson, J., granted the motion and directed the jury to return a verdict in favor of defendant. From an order denying plaintiff's motion for a new trial, it appealed. Reversed and new trial granted.

*Harris Richardson* and *Harold C. Kerr*, for appellant.

Title could not pass till the wheat was ascertained and inspected. Martin v. Hurlburt, 9 Minn. 132 (142); Fishback v. G. W. Van Dusen & Co., 33 Minn. 111, 122; Thompson v. Libby, 35 Minn. 443; State v. Meehan, 92 Minn. 283; Schreiber v. Butler, 84 Ind. 576, 583; Gardner v. Lane, 12 Allen, 39; Blanchard v. Low, 164 Mass. 118; Robinson v. Stricklin, 73 Neb. 242; LaVie v. Crosby, 43 Ore. 612; Barber v. Andrews (R. I.) 69 Atl. 1. It is evident that all the parties contemplated weighing before payment. Title would not pass till payment. Appellant was to pay for the weighing, that is, it was to have it done. Consequently title did not pass prior to weighing. Restad v. Engemoen, 65 Minn. 148; Welter v. Hill, 65 Minn. 273; The Elgee Cotton Cases, 22 Wall. 180; Lingham v. Eggleston, 27 Mich. 324; Byles v. Colier, 54 Mich. 1; Hays v. Pittsburgh G. & B. Packet Co., 33 Fed. 552; Mobile v. Fry, 69 Ala. 348; Frost v. Woodruff, 54 Ill. 155; Commercial v. Gillette, 90 Ind. 268; McClung v. Kelley, 21 Iowa, 508; Jennings v. Flanagan, 5 Dana, 217;

Gibson v. Ray (Ky.) 89 S. W. 474; Tingle v. Kelly (Ky.) 92 S. W. 303.

Payment of price and delivery were concurrent conditions. Lehman v. Warren, 53 Ala. 535; Adair v. Stovall, 148 Ala. 465; Stone v. Perry, 60 Me. 48; George W. Merrill Furniture Co. v. Hill, 87 Me. 17; Scudder v. Bradbury, 106 Mass. 422; Haskins v. Warren, 115 Mass. 514; Hirsch v. Leatherbee, 69 N. J. L. 509; Catlin v. Jones, 48 Ore. 158; Palmer v. Hand, 13 Johns. 434; Morris v. Rexford, 18 N. Y. 552. The fact that the bills of lading were not turned over seems to be sufficient evidence that title was not to pass till payment was made. Security Bank v. Luttgen, 29 Minn. 363; Freeman v. Kraemer, 63 Minn. 242; Bank v. Cummings, 89 Tenn. 609; Newcomb v. Boston, 115 Mass. 230; McArthur v. Old Second Nat. Bank, 122 Mich. 223; Commercial v. Chicago, 160 Ill. 401; Walters v. Western & A. R. Co., 63 Fed. 391; National Bank of Commerce v. Merchants Nat. Bank, 91 U. S. 92. When nothing is said, a sale for cash on delivery is presumed. Fishback v. G. W. Van Dusen & Co., 33 Minn. 111. Delivery of possession and delivery of title are two different things. National Bank v. Chicago, B. & N. R. Co., 44 Minn. 224, 228; Freeman v. Kraemer, supra; Ward v. Shaw, 7 Wend. 404. A seller for cash may reclaim for nondelivery. Globe Milling Co. v. Minneapolis Ele. Co., 44 Minn. 153, 158.

*Lancaster & McGee* and *F. M. Miner,* for respondent.

The due course of business, as carried on by and between the members of the chamber of commerce, to which these persons belonged, was fully gone into and established by the evidence. From these written documents, and the acts done in the due course of business by these persons, only one inference could be drawn. No further proof could be adduced as to intent, unless appellant had been permitted to declare the secret intent in mind when the physical acts testified to were performed. But no case has been found sustaining such declarations, and it is believed none exists, for to so hold would be against reason and common sense. They would amount to no more than self-serving declarations, contradicting conclusions of law

which would flow from otherwise undisputed facts, and such declarations the law forbids. Witte v. Reilly, 11 N. D. 203, is squarely in point upon this proposition. The case was reversed upon that very ground.

There are other considerations arising out of the circumstances in evidence which are very persuasive and of strong probative force in determining the question of intent involved here, if it were otherwise doubtful. They are these: Each of the persons involved in these transactions was the owner of a membership, and in good standing as members of the chamber of commerce of the city of Minneapolis. This is a body of persons organized and maintained for the express purpose of buying and selling grain for gain. That fact of itself would necessarily give to each member confidence in all the other members, and all the other members would have, for the same reason, a feeling of confidence in each one, whereby such members would repose in each other confidence not reposed in outsiders. It is these attributes which naturally and necessarily produced the custom as to the ordinary and usual manner of doing business between members, as testified to upon this record.

This explains why title to identical quantities of wheat was constantly passing from one member to another so that a half dozen changes in such title might take place before the first vendor had presented a bill to and received payment from his vendee. A little reflection must convince the mind that without this condition and method, trading among the members of this chamber of commerce and other similar concerns must cease. It is like all business. It rests essentially upon the confidence which the members repose in each other. With this element of confidence gone, this system of trading as carried on, within this chamber, must cease because men would not take the risks that must necessarily follow as the result of a system such as the counsel for appellant contend for in this lawsuit.

LEWIS, J.

This action was brought to recover the value of 5,334 bushels of wheat, which appellant claimed was converted by respondent. On

February 6, 1907, appellant and one W. B. Mohler, both members of the board of trade of the chamber of commerce of Minneapolis, entered into a transaction on the floor of the board of trade by which appellant, through its secretary, Mr. McClatchie, agreed to sell to Mohler five thousand bushels No. 1 Northern wheat at 83¾ cents per bushel, to arrive at Minneapolis at any time before June 1. The transaction occurred in the ordinary course of business, and at the close of the day appellant sent Mohler the following letter:

"Minneapolis, Minn., Feb. 6, 1907.

"Mr. W. B. Mohler, City—Dear Sir: We confirm sale to you today of 5,000 bushels 1 Northern wheat, 83¾, to arrive any time to June 1st, 2 Northern to apply. Please check, and if not correct notify at once.

"Yours truly,

"E. L. Welch Company."

On April 17 two cars of wheat were shipped to appellant at Minneapolis by the Mapes Farmers' Elevator Company, and a bill of lading was issued by the Great Northern Railway Company on that day to appellant as consignee. A similar shipment was made on April 19. The first two cars were inspected by the state grain inspector on April 22 and the next two on April 23, and certificates of inspection accordingly issued. Samples of the wheat and notations of inspection were placed for exhibition on the floor of the board, and Mohler signified his acceptance of the wheat, and thereupon, April 22, appellant sent Mr. Mohler the following notice:

"We apply on sale to you to-day of:

| Car | Initial | Grade | Article | Price | Remarks |
|-----|---------|-------|---------|-------|---------|
| 23,724 | G. N. | 1° 1 | Wht. | 83 3-4 | L. Sale 2/65 M |
| 29,738 | ". " | 1° 2 | " | 83 3-4 | L. Do. |

"Please check, and if not correct notify at once.

"Yours truly,

"E. L. Welch Company, Per (N)."

The capital letter "L" indicated that the wheat was to go to re-

spondent's elevator. On April 23 a similar notice was sent with respect to two cars, Nos. 14,072 and 29,592, which arrived in Minneapolis on April 22 and 23, respectively, the bills of lading for which were held by appellant, and the freight paid by it.

On April 13, 1907, Mohler sold to respondent, on the floor of the board of trade, ten thousand bushels of cash wheat, to arrive, and confirmed the sale as follows:

"Minneapolis, Minn. Apr. 22, 1907.

"Lahart Ele. Co.—Dear Sir: Confirm delivery to you to-day of:

| Car | Initial | Grade | Article | Price | Remarks |
|------|---------|-------|---------|----------|-----------|
| 23,724 | G. N. | 1° 1 | Wh. | OS4/13–84½ | L via St. L |
| 29,738 | —— | 1° 2 | —— | ———— | ————— |

"Please check this. If not correct, notify us at once.

"Yours truly,

"W. B. Mohler, per M."

On the twelfth of May one of the four cars, No. 14072, arrived at respondent's elevator and the grain was unloaded, and on the same day weighed by the deputy state weighmaster on scales in the elevator, and report made that night to the state weighmaster in Minneapolis. The following morning, May 13, appellant obtained the quantity of grain from the state weighmaster's office, and at once made demand on Mohler for the amount, who notified appellant that he was in trouble and could not pay for it. Thereupon appellant sent written notice to respondent not to unload the other three cars, and was informed that they were already unloaded. The deputy state weighmaster testified that the three cars were weighed May 13, and that the last car was not completely unloaded until after eleven o'clock that morning. The weights were not made public until May 14. There was a dispute as to the time the notice not to unload was received, respondent claiming that it was three o'clock p. m. May 13 while appellant claims that it was sent about eleven o'clock a. m.

At the close of the trial the court instructed the jury to return a verdict for respondent.

It appears from the evidence that the transaction involved in this

case, with reference to sale and delivery, was in accordance with the custom generally followed by purchasers and sellers of grain on the floor of the Minneapolis board of trade. Appellant's right to recover depends upon whether title to the grain passed from it to Mohler on the twenty-second and twenty-third of April, when the written notices of the application of the cars of grain to the February sale were sent by appellant and received by Mohler. If it was intended by the parties that the sale should become complete at that time, then title passed, and the failure of Mohler to make payment was a risk which appellant assumed.

A cash transaction contemplates no credit; whereas a bargain which contemplates credit until payment is made is termed a conditional sale. In this case the difficulty is to discover when the parties intended the sale to become complete. The February contract, made on the floor of the board of trade, was executory. It was immediately binding upon the parties, but was to be executed in the future. Title to the wheat did not pass at the date of the contract, because it was a present agreement for future delivery of grain upon payment of cash. The parties did not intend the grain should be paid for at the time notices were issued, nor at the time cars were switched out of the Great Northern yards to the Milwaukee tracks, because the amount of the bill could not be estimated until the wheat was unloaded in some elevator and weighed. If the contract was completed upon service of the application notices, or at the time the cars were switched onto the Milwaukee tracks, then the subsequent weighing of the grain may be considered a mere incident to delivery, for the purpose of ascertaining the exact amount of the contents of each car, and the seller took the chance of recovering payment from the purchaser after parting with control of the grain. The fact that nothing further remained to be done by the seller to complete delivery after giving the switching order was evidence tending to show that it was the intention to part with possession and title at that time. There are other facts, however, giving rise to other inferences. The switching order was not delivered by the seller and executed by the railroad company until some time after the notices of application were sent by appellant to Mohler. The seller still held the bills of lading, and until un-

109 M.—15

loaded the cars were still under his control. This is important, as bearing on the question of delivery. It is consistent with appellant's claim that delivery was not complete until the grain was weighed.

The question at issue may be illustrated by inquiring what the relation of the parties would be, had the deal taken place outside of the board of trade. Let it be assumed that Mohler purchased the grain for his own use as a mill man, and had directed it to be delivered to himself at elevator "L." Under such circumstances payment and delivery at the elevator would be concurrent and mutually dependent acts, and title would not be presumed to pass on delivery, unless accompanied by payment. Such is the reasoning in Fishback v. G. W. Van Dusen & Co., 33 Minn. 111, 22 N. W. 244. See also Globe Milling Co. v. Minneapolis Ele. Co., 44 Minn. 153, 46 N. W. 306, and Carter, Rice & Co. v. Cream of Wheat Co., 73 Minn. 315, 76 N. W. 55. The main point of distinction between the present transaction and one of that character is the fact that the sale here was made on the floor of the board of trade, according to the usual course of business pursued there.

The learned trial court held that the parties intended to pass title upon the giving of the application notices, although the grain had not passed absolutely out of the seller's control. There is strong reason for this conclusion from the fact that, immediately upon being notified of the application of the wheat, the buyer was at liberty to sell the same grain, and that thus the same shipment or application of actual grain might become the basis of many transactions between board members. But the presumption that the seller does not part with the title until payment, when payment and delivery are concurrent acts, rests upon a very just basis. A cash sale is an exchange of property for money, and if delivery is made by the seller, relying upon performance by the other party, such delivery does not complete the sale, and the seller may take possession of his property if payment be not made in the ordinary course of business, or, if the purchaser has in the meantime placed it beyond recovery, its value must be accounted for. Unloading and weighing at the elevator and payment were substantially concurrent acts, and, unless the general rule was changed by the method of transacting business on the board

of trade, title did not pass until the grain was paid for. The wheat having been unloaded, it was impossible to secure possession, and the rights of the parties became fixed upon refusal to make payment. If it conclusively appears, from the method of dealing on the board of trade, giving notices, switching orders, weighing, and payment, that it was the intention of members, in dealing with each other in actual grain, that the seller should assume the risk of parting with his title and possession at the time of giving notices, and rely only on the responsibility of the buyer, then the order appealed from must be sustained. In our judgment the evidence does not require such conclusion. As between the seller and buyer, there is nothing in the course of dealing inconsistent with the general rule that in a cash transaction the title is not presumed to pass until payment is made. As to subsequent purchasers on the board, who buy grain for future delivery, such transactions may be consistent with the general rule that title does not pass until payment is made. If the custom was established that title passed upon the giving of the application notices, the record fails to show it, and the parties to this transaction did not proceed in accordance with such understanding.

We are of opinion that the question of title was a disputed one, and that it does not conclusively appear from the evidence when title passed and when the delivery was completed. It was a question of fact to be determined by the jury. Consequently the trial court erred in directing a verdict for respondent.

Reversed. New trial granted.

JAGGARD, J.

I dissent.