## MARX v. UNITED STATES.

### No. 10571.

Circuit Court of Appeals, Eighth Circuit.

Nov. 13, 1936.

246

Neil Hughes, of Minneapolis, Minn.
(Sam Kroman, of Minneapolis, Minn., on
the brief), for appellant.

James J. Giblin, Asst. U. S. Atty., of
St. Paul, Minn. (George F. Sullivan, U.
S. Atty., and John L. Wheeler, Asst. U.
S. Atty., both of St. Paul, Minn., on the
brief), for the United States.

Before GARDNER, SANBORN, and
FARIS, Circuit Judges.

GARDNER, Circuit Judge.

Appellant and two others, Clarence H.
Landwehr and Otto Villwock, were indict-
ed in an indictment containing three
counts, the first and second counts charging
a violation of the Liquor Taxing Act of
1934, § 201 (26 U.S.C.A. § 1152a), while
the third count charged a conspiracy to
commit an offense against the United

States in violation of the Criminal Code, § 37 (18 U.S.C.A. § 88). We shall refer to the parties as they were designated in the lower court.

The first count charged in substance that the defendants on the 20th day of December, 1934, unlawfully, willfully, and feloniously did possess a quantity of distilled spirits, to wit, 68 gallons, more or less, of alcohol, without the immediate containers thereof having affixed thereto a stamp denoting the quantity of distilled spirits contained therein and evidencing payment of all internal revenue taxes imposed upon such spirits. The second count is identical with the first, except that it charged the defendants with a sale of the distilled spirits described in the first count. The third count charged in substance that from and including December 19, 1934, to and including December 20, 1934, the defendants conspired with each other and together with sundry and divers other persons to the grand jurors unknown to commit certain offenses against the United States, to wit, to possess and sell a quantity of distilled spirits without the immediate containers thereof having the proper stamps attached evidencing payment of all internal revenue taxes imposed on said distilled spirits. The indictment set forth three overt acts in furtherance of the conspiracy alleged. On trial the jury found the defendant Clarence H. Landwehr guilty on the first and third counts of the indictment and not guilty on the second count, and it found the defendant herein not guilty on the first count and guilty on the second and third counts. The defendant Otto Villwock entered a plea of guilty. The appellant, Arthur Marx, was sentenced on the second count to imprisonment in federal prison for a period of 18 months and to pay a fine of $1,000, and on the third count a like imprisonment and fine, the sentences to run consecutively. Defendant Marx alone prosecutes this appeal, seeking a reversal of the judgment on the grounds: (1) Insufficiency of the evidence to support the verdict of guilty as to the second or third counts; (2) errors of the court in its rulings on the admissibility of evidence; (3) error of the court in giving a supplemental charge to the jury. We shall consider these contentions in the order named.

As has been observed, the second count of the indictment charged a sale of distilled spirits to one Guy W. Cravens, and it is therefore necessary to consider the evidence produced in support of this charge. It is strenuously urged that there is no evidence that the defendant Marx ever agreed to sell the distilled spirits or alcohol, but that the agreement for such sale was between the government witness, Guy W. Cravens, and the defendant Otto Villwock, but, in our view of the issue presented on this count of the indictment, it is not necessary to consider the evidence of surrounding circumstances tending to connect the defendant with the alleged sale of this liquor. Confessedly, if there were no completed sale of the alcohol by any of the defendants, then, of course, the defendant could not properly be convicted under count 2. The only evidence as to such a sale was given by the government witness, Guy W. Cravens. He testified that he had negotiations about the sale of alcohol with one Ringler at Staples, Minn., on December 19, 1934; that on December 20, 1934, pursuant to a talk he had had with Ringler, he had a conversation over the telephone with Villwock. He then negotiated with Villwock in regard to the price at which Villwock would furnish him alcohol, and the price finally agreed upon was $3.50 a gallon. Following this conversation, Villwock, about 9 o'clock p. m., came to Cravens' room at the Breen Hotel at St. Cloud, Minn., and asked Cravens to pay him in advance for the alcohol. Cravens showed him the money, but refused to turn it over to him, and after some negotiation it was agreed that Villwock should take Cravens' car and load the alcohol into it. Villwock told him it would take from fifteen to twenty minutes to get the alcohol. After waiting an hour, the witness became apprehensive that he had "slipped somewhere." One of the agents who was assisting him called up from the lobby, and he gave the assistant his car number and told him to scout around to try and locate his car. Just at this time Villwock called on the phone, and said, "O. K., George, 'the stuff is ready." Villwock declined to come up to Cravens' room, but said, "No, you come down here. I can not be monkeying around." The witness, accompanied by a federal agent, then went down and met Villwock in the lobby. He was then driven to the place where his car was standing. Villwock then said to him, "You will find the stuff all there." At that time defendant Landwehr was sitting behind the

steering wheel, and as they approached the Cravens car he opened the door and started to get out. The witness was then asked: "Q. Did he get clear out or not. A. Well, he did not right then because I opened the back door and he could not quite get out at that time."

When the witness opened the door of his car, he found that there were 68 one-gallon tins of alcohol, no United States revenue stamps being on any of the containers? What then occurred is stated by the witness as follows: "At the time that I discovered the alcohol in my automobile, I had expected that the other federal and state officers would arrive and in order to stall for time I said to Villwock, 'This is fine, Otto, but I will never pay for the stuff until I have a chance to look at it;' so I picked up one of the cans, pulled out a pair of pliers and twisted the top off, stuck my finger in it and was just going to taste it when I saw a car coming down the street without any lights which I recognized as the agents' car."

Then follows testimony as to the arrest of Villwock and Landwehr and the escape of the defendant Marx.

In Calcara v. United States (C.C.A.) 53 F.(2d) 767, 768, in an opinion by Judge Stone, it is said: "A sale always involves the passage of title to the thing bought and the payment therefor. The parties may make any agreement they desire either as to when title shall pass or as to when payment shall be made. But, whatever that agreement may be, there is no completed sale until the title to the thing sold passes to the buyer in accordance with the agreement. * * * Where no specific intention appears from the contract of the parties the court must take all of the circumstances surrounding the transaction and therefrom declare the intention."

The Supreme Court of Minnesota has declared that: "In the absence of evidence indicating that credit is to be given, a sale is presumed to be for cash. In the instant case, it was expressly stated that the sale was to be for cash. Payment and delivery in the sale of personal property are concurrent and mutually dependent acts. If the payment is evaded by the purchaser upon getting possession of the property, the seller may immediately reclaim the property; the title in such case not passing to the purchaser, the delivery being merely conditional, and the purchaser taking simply as trustee for the seller until the condition is performed." Gustafson v. Equitable Loan Ass'n, 186 Minn. 236, 243 N.W. 106, 107. See, also, Schnirring v. Stubbe, 177 Minn. 441, 225 N.W. 389.

The transaction involved took place in Minnesota. The parties thereto were conclusively presumed to know the law as it existed at the time and place of making the contract and where it was to be performed, and this law entered into and formed a part of it as fully as if it had been expressly referred to or incorporated in its terms. Farmers' Bank v. Federal Reserve Bank, 262 U.S. 649, 43 S.Ct. 651, 67 L.Ed. 1157, 30 A.L.R. 635. In the circumstances disclosed by the evidence, it is clear that the payment of the purchase price was a condition precedent to the passing of title. This was not only the presumption, but the evidence clearly indicates that the parties intended a sale for cash on delivery. Canadian Northern Ry. Co. v. Northern Mississippi Ry. Co. (C.C.A.8) 209 F. 758; Globe Milling Co. v. Minneapolis Elev. Co., 44 Minn. 153, 46 N.W. 306.

Cravens asserted a right to inspect for the purpose of determining the character or quality of the liquor, and this was acquiesced in by Villwock. Cravens asserted, "I will never pay for the stuff until I have a chance to look at it," and he proceeded then to open one of the cans and "was just going to taste it," when the agents arrived and the defendants were placed under arrest. He in fact had the right to an inspection and examination of the property for the purpose of determining whether it was of the character and quality contracted for and he had therefore not accepted it, and this is an additional reason why it must be held that title did not pass and the sale was not consummated. Toledo Computing Scale Co. v. Fredericksen, 95 Neb. 689, 146 N.W. 957; Ten Broeck Tyre Co. v. Rubber Trading Co., 186 Ky. 526, 217 S.W. 345; Field v. Descalzi, 276 Pa. 230, 120 A. 113.

We conclude that the evidence was not sufficient to sustain the conviction of the defendant on this second count.

As the sentences run consecutively, it is necessary to examine the evidence in support of the third or conspiracy count. The guilt of the defendant on this count is not dependent upon the accomplishment of the object or purpose of the conspiracy.

Middleton v. United States (C.C.A.8) 49 F.(2d) 538; Brown v. United States (C.C. A.9) 43 F.(2d) 906; United States v. Rabinowich, 238 U.S. 78, 35 S.Ct. 682, 684, 59 L.Ed. 1211. A conspiracy to commit a crime is a separate offense from the crime that is the object of the conspiracy. As said in United States v. Rabinowich, supra: "The conspiracy, however fully formed, may fail of its object, however earnestly pursued; the contemplated crime may never be consummated; yet the conspiracy is none the less punishable."

[7] It is charged in the third count that the defendants together and with each other and "together with sundry and divers other persons" conspired to commit the crimes described in counts 1 and 2 of the indictment. It appears from the evidence that Cravens, a state officer, opened negotiations with one Ringler at Staples, Minn., giving him all the details concerning the proposed purchase of alcohol, and made arrangements with Ringler to have Villwock near a telephone at 11 o'clock the next day. Defendant Villwock then called Cravens at the place and time which had been agreed upon between Cravens and Ringler, indicating a conspiracy between Villwock and Ringler. After a telephone conversation, Villwock met Cravens at the Breen Hotel and agreed to deliver the alcohol. Cravens testified with reference to his first meeting with Villwock: "I started to dicker with him for the purchase of a batch of alcohol and we discussed the price, but could not get together as he was a little bit high,—at least I told him that I thought so, and suggested that he go and talk with Ringler from whom he could get all the details which I had given Ringler the day before, and that then he should call me back at room 104, Breen Hotel, St. Cloud, Minnesota, which he agreed to do. In a couple of hours he called me from Staples, Minnesota, at my room at the Breen Hotel, and we then agreed on a price at $3.50 a gallon which I told him I was willing to pay on the first deal and I gave him the impression I was 'phoning as a bootlegger using an assumed name, and I told him his price was high, but that I was hard up for the stuff and needed it and would pay that price for the first deal."

After this conversation, Villwock came to see Cravens at the Breen Hotel. As Cravens, Villwock, and a Mr. Fedore left the front door of the Breen Hotel, they crossed the street, approaching a brown automobile on the south side of the street facing east. Cravens testified: "I saw a man sitting behind the wheel who I would say was the defendant, Arthur Marx. * * * While we were standing there by the car I said to Villwock, 'You have not got Arthur Ringler with you,' as that was my reason for looking into the car as I expected to see Art Ringler in this car that was parked, and Villwock says, 'Hell, no, he is not here,' and I then walked around to the other side of the car and opened the back door which would be the right hand rear door of the car next to the curb and saw that it was loaded with clear glass one gallon jugs filled with a dark liquid of some kind. Some of them were piled up on the seat and some of them were on the floor and there was only room for one person on the back seat which would be on the side opposite from where I was standing. I inquired from the defendant, Marx, 'Is this my load, is this my stuff?' and he said, 'Hell, no,' or something to that effect."

Villwock, Cravens, and Fedore then got into the car being driven by Marx. Villwock then said to Marx, "Let's get away from this Breen Hotel; the place is hot."

Cravens further testified: "When we were standing by the car at the curb I also asked Villwock, in the hearing of the defendant Marx, if those jugs in the car were mine and Villwock responded, 'No, this is not your stuff; we have got your stuff all loaded in your car and we are going to take you to it,' without mentioning the particular place we were going. We drove East on St. Germain Street four or five blocks to Eighth Street and then turned south on a street which winds or angles back and forth in a sort of a southwesterly direction for about eight or ten blocks and as we were traveling along and had gone about half way I observed a car parked on the left hand side of a side street with lights on which I believed was my car and I asked the defendant Marx if that was my car and in response to my question he said that it was not. We brought our car to a stop at a point which I have since found out was Twelfth Avenue and Ninth Street and near the house and garage where the father of the defendant Landwehr resided. As we passed the Landwehr home I saw my car standing on the street with the motor running and the lights out; with someone sitting behind the

wheel and at this time the automobile in which we were riding came to a stop a little ways past my automobile and closer in towards this garage and probably fifteen feet from my car and I then observed that the man who was sitting behind the wheel was the defendant Landwehr."

The evidence plainly shows the existence of a conspiracy to commit the offenses described in counts 1 and 2. It shows a combination between two or more persons with a common design and purpose. True, the proof does not show a formal agreement between the parties, but it is sufficient that the minds of the parties met understandingly so as to bring about an independent and deliberate agreement, and we have held that a mutual implied understanding is sufficient. If there is a concert of design, it is not essential that there be a participation by each conspirator in every detail of its execution. A conspiracy may be proved and in fact is usually proved by circumstantial evidence, and overt acts of the parties with other attending circumstances may be considered in determining whether a conspiracy exists. Galatas v. United States (C. C.A.8) 80 F.(2d) 15; Rand v. United States (C.C.A.8) 77 F.(2d) 52; Feigenbutz v. United States (C.C.A.8) 65 F.(2d) 122; Goode v. United States (C.C.A.8) 58 F.(2d) 105.

It remains to consider whether there was substantial evidence connecting the defendant with this conspiracy. The jury having found him guilty, that view of the evidence and the inferences reasonably deducible therefrom must be accepted which is most favorable to the government, and we held in Galatas v. United States that, "where a conspiracy is established, but slight evidence connecting a defendant therewith may still be substantial, and if so, sufficient." As bearing upon the connection of the defendant with the conspiracy which the jury found to exist, it is to be observed that when the prime actor, Villwock, went with Cravens and Fedore from the lobby of the Breen Hotel, he said, "I have got a car over here." He then led the way directly across the street to a car in which the defendant was sitting behind the wheel, and was at that time the sole occupant. Cravens then inquired of him, "Is this my load, is this my stuff?" to which he replied, "Hell, no." Villwock, Cravens, and Fedore then got into the defendant's car, and the defendant, without any instruction or direction from any one, proceeded to drive his car. In the hearing of the defendant, Villwock said to Cravens, "We have got your stuff all loaded in your car, and we are going to take you to it." The "we" could only have referred to Villwock and Marx. Without any directions or instructions, the defendant drove his car, with the occupants, through devious ways and winding streets pursuant to the announced purpose of Villwock that "we are going to take you to it." On the way, Cravens observed a car parked by the side of the street with its lights turned on, which he thought was his car, and he asked the defendant if it was his car, in response to which the defendant said that it was not, and he unerringly piloted his own car to the very spot where Cravens' car was standing laden with alcohol, and where, behind the wheel, was the defendant Landwehr. Defendant got out of his car, or at least "part way out," and, when the officers arrived and attempted to make arrests, he got back in his car, slammed the door, and drove down the street, escaping arrest for the time being. Defendant took the witness stand and denied absolutely that he was present. There is, therefore, no explanation of the incriminating circumstances, and the jury manifestly did not believe the defendant's testimony to the effect that he had not been present. The circumstances convincingly show that the defendant knew about the entire plan, and that he participated therein. He had his car in waiting; he manifestly knew Cravens' car and knew where it was, and, in an attempted furtherance of the purpose of the conspiracy, he drove the parties to the very spot where the delivery of the alcohol was to have been made. We conclude that there was substantial evidence tending to prove the defendant guilty of the offense charged in count 3 of the indictment beyond a reasonable doubt. Hence the court did not err in denying defendant's motion for a directed verdict as to that count.

A number of the assignments of error challenge the rulings of the court on admitting or rejecting evidence. It is urged on the part of the government that the assignments as printed in the brief are all fatally defective, in that they do not comply with rule 14 of this court, which requires that, "when such error is as to the

admission or rejection of evidence, the statement shall quote such evidence with the rulings thereon, giving pages of the printed record where it occurs." None of the assignments comply with this rule of court, and there is no way of determining from the assignments where in the printed record the alleged erroneous rulings may be found. For the most part, the rulings complained of are rulings of the court denying defendant's motion to strike out testimony. As to these, it may be observed in passing that the motion is directed to the entire testimony of the witness and not to any specific testimony, and, manifestly, much of the testimony was competent, relevant, and material. If there was incompetent evidence, it was incumbent upon counsel for defendant specifically to point it out and to confine his motion thereto. As at least a part of this testimony was admissible, the general objection was properly overruled. United States v. McMasters, 4 Wall. 680, 18 L.Ed. 311; Osley v. Adams (C.C.A.5) 268 F. 114; Kerbaugh v. Caldwell (C.C.A.3) 151 F. 194, 10 Ann. Cas. 453; Chicago, etc., R. Co. v. De Clow (C.C.A.8) 124 F. 142.

Again, it is noted that the testimony at which the motions are directed was for the most part admitted without objection, and the grounds for objection thereto were as apparent when the evidence was offered as at the close of the testimony. Counsel could not be permitted to sit idly by and permit the witnesses to testify, possibly hoping that his client might benefit thereby, and then, finding that the testimony was not beneficial, move to strike it out. Such a practice cannot be tolerated. It is only when evidence apparently admissible when offered is shown by subsequent developments to be inadmissible that the objection may be made in the form of a motion to strike out or by a request for an instruction that its effect be limited or that it be withdrawn from the consideration of the jury. St. Louis & S. F. R. Co. v. Duke (C.C.A.8) 192 F. 306. Ordinarily, an objection to the introduction of testimony must be made at the earliest possible opportunity after the ground of objection becomes apparent, or it will be held to have been waived, and a motion to strike out objectionable testimony must be made at the time the testimony is given if the ground of objection to it is then apparent.

We are of the view that the defendant is not entitled to a review of the rulings which he now urges as erroneous, first, because the assignments of error are defective, and, second, because the objections, if ever available, were waived by failure timely to urge them.

It remains to consider the contention that the court erred in giving a supplemental charge to the jury. After the jury had retired to consider its verdict, the court on its own motion called the jury into the courtroom and gave a supplemental charge. This was excepted to as being argumentative, and, further, on the ground that the jury had not asked any question as to what they were in doubt about. It is argued in this court that the charge had a tendency to coerce the minority of the jury into surrendering their convictions and yielding to the judgment of the majority of the jury. However, no such exception was urged in the court below, and it cannot therefore be considered here, and counsel does not here urge that the charge was argumentative.

The judgment appealed from is therefore reversed as to count 2 and affirmed as to count 3, and the cause is remanded for a modification of the judgment and sentence in accordance herewith.