## PETERS v. UNITED STATES.
### No. 13348.

Circuit Court of Appeals, Eighth Circuit.
Feb. 3, 1947.

Rehearing Denied March 4, 1947.
Writ of Certiorari Denied May 12, 1947.
See 67 S.Ct. 1316.

Appeal from the District Court of the United States for the District of Nebraska; John W. Delehant, Judge.

Rinehard H. Peters was convicted of conspiring to violate the National Cattle Theft Act, and he appeals.

Hugh J. Boyle, of Omaha, Neb. (Eugene D. O'Sullivan, of Omaha, Neb., on the brief), for appellant.

A. Z. Donato, Asst. U.S. Atty., of Omaha, Neb. (Joseph T. Votava, U. S. Atty., of Ohama, Neb., on the brief), for appellee.

Before GARDNER, THOMAS and JOHNSEN, Circuit Judges.

THOMAS, Circuit Judge.

Rinehard H. Peters, Raymond Yellow Thunder, and James Lawrence Janis were indicted in 1943 for conspiring in violation of § 37 of the Criminal Code, 18 U.S.C.A. § 88, to commit an offense against the United States, namely, to violate the National Cattle Theft Act, 18 U.S.C.A. § 419b. Yellow Thunder and Janis pleaded guilty. Peters pleaded not guilty, was tried and convicted, and he appeals. Janis died before the trial of Peters, but Yellow Thunder was a witness for the government at the trial.

On this appeal Peters contends (1) that the evidence does not support the allegations of the indictment, and (2) that the court failed properly to instruct the jury on the burden of proof. The question of the sufficiency of the evidence was raised by motions for a directed verdict made at the close of the government's evidence and at the conclusion of all the evidence. The criticism of the instructions seems first to have been made in argument on the motion for a new trial.

The indictment charged that the "conspirators" named above did, on or about

December 25, 1942, and continuously thereafter during the time thereinafter mentioned, unlawfully, willfully, and feloniously conspire to violate the National Cattle Theft Act, in this: "That it was the purpose and object of said conspiracy and of said conspirators, and said conspiracy consisted of their mutual agreement and the agreement of each of them, to· unlawfully, willfully, knowingly, and feloniously transport and cause to be transported in interstate commerce from the Pine Ridge Indian Reservation in the State and District of South Dakota to the City of Norfolk, in the County of Madison, in the Norfolk Division of the District and State of Nebraska, stolen cattle, which cattle said conspirators or some of them would steal in said State and District of South Dakota, and to sell and dispose of same to one George Roman in said City of Norfolk and divide the profits of such unlawful sale thereof among them, the said conspirators." Seven overt acts were enumerated, four of which occurred wholly or partially in the district of Nebraska where the indictment was returned.

In reviewing the record in a conspiracy case to determine the sufficiency or insufficiency of the evidence it is not for this court "to weigh the evidence or to determine the credibility of witnesses. The verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it. * * * Participation in a criminal conspiracy need not be proved by direct evidence; a common purpose and plan may be inferred from a 'development and collocation of circumstances'." Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680; United States v. Manton, 2 Cir., 107 F.2d 834; Pilgreen v. United States, 8 Cir., 157 F.2d 427, 428; Joyce v. United States, 8 Cir., 153 F.2d 364, 366; Braatelien v. United States, 8 Cir., 147 F.2d 888, 893; Egan v. United States, 8 Cir., 137 F.2d 369, 375, 376. Circumstantial evidence is sufficient to sustain a verdict when the facts and circumstances are such as legitimately tend to sustain an inference of their existence. Generally direct proof of a criminal conspiracy in not available. United

States v. Manton, supra. And see Curley v. United States, App.D.C., 160 F.2d 229.

Applying the foregoing rules to the evidence in this case we think it is clear that the jury was warranted in inferring the existence of the conspiracy alleged in the indictment and that Peters participated in it. The jury might and presumably did find that Peters lived at Rapid City, South Dakota; that he was engaged among other pursuits in buying and selling cattle and horses; that he operated over a large territory in South Dakota and Nebraska and that he used trucks to carry and transport the livestock handled by him from the places where it was purchased to the places where it was sold.

Yellow Thunder lived about eight miles southwest of Kile, South Dakota; and Janis lived about two miles north of Yellow Thunder's place.

Peters and Janis called at Yellow Thunder's place on December 9, 1942, and talked about buying horses. About three weeks later, between Christmas and New Year's, Peters and Janis called again on Yellow Thunder. At that time Peters told Yellow Thunder to get him 10 head of cattle "and not give a damn what brand is on them."

On February 9, 1943, Yellow Thunder broke the fence and stole and drove away 10 head of cattle from George Shellenberger's pasture. He first took the cattle to Brown Thunder's place and then at the direction of Peters took them over to Janis' place and put them in his barn. On February 10, Peters came to Janis' place with a truck and Peters, Janis and Yellow Thunder loaded nine of the cattle in the truck. One of the 10 cattle got away from them. At that time Yellow Thunder told Peters that he had stolen the cattle from Shellenberger; and Peters explained that they were going to take the cattle to Norfolk, Nebraska.

After the cattle were loaded Peters, Janis and Yellow Thunder got into the truck and "headed" for Norfolk, Nebraska, that evening, arriving there about noon the next day. On the following day, February 11, 1943, Peters sold the cattle to George Roman receiving a check in payment in the sum of

$526.85, $200 of which he gave to Yellow Thunder and $25 to Janis.

The fact that the cattle were stolen from Shellenberger was corroborated by his testimony and that of his wife; and the check, endorsed by Peters, given in payment for the cattle by Roman was in evidence.

These conversations, the contacts of the parties and their concurrent and cooperative actions sustain the inference of the jury that a criminal conspiracy existed and that all of the defendants participated in it. Further, the jury, as well as the judge, had the advantage of seeing the witnesses and hearing them testify.

It is true that Peters testified at the trial and that his testimony was on most material points inconsistent with the testimony of other witnesses; but these facts presented questions solely for the jury as they pertained only to the credibility of the witnesses.

■ Another point argued and urged as showing a variance between the allegations of the indictment and the proof related to the identification of the cattle stolen from Shellenberger and those sold to Roman. The indictment charged as an overt act that the cattle stolen and transported consisted of "nine head of white face cattle, same being the property of George Shellenberger of Kile, South Dakota." The defendant's witnesses testified that the cattle transported were "brindle face cattle." Yellow Thunder and Shellenberger both testified that they were white face cattle. The jury evidently believed the government's witnesses, and the finding of the jury is conclusive on appeal.

The criticism of the instructions came about in connection with counsel's exceptions. After the instructions had been given the court inquired whether there were any exceptions. Whereupon counsel for defendant said: "I did not hear it stated as one of the essential elements that the cattle stolen and transported in interstate commerce in the instant case must be the cattle of George Shellenberger and no one else's cattle."

"The court: The exception is allowed, and to clarify any doubt upon the point the court will undertake on the return of the jury to supply that point by supplementary oral comment."

Upon the return of the jury to the court room the court among other things, said: "There is, however, one other point upon which counsel says the court was not sufficiently clear and explicit. Against the possibility that the criticism may be well taken, I desire now to say to you and do say to you that before you may find the defendant guilty in this case you must find, among the other things which I have outlined to you, that the cows which were transported in interstate commerce were the 9 cows or property of George Shellenberger, theretofore stolen from George Shellenberger by Yellow Thunder."

After which the court said, "Is there further exception?" and there was no response.

The criticism of this supplemental instruction is that it fails to require "proof beyond a reasonable doubt" that the cattle transported were the Shellenberger cattle.

■ The obvious answer to defendant's argument on this point is that when all parts of the instructions are read together the criticism fails for want of substance. The instruction upon the burden of proof resting upon the government is complete and correct. One part of an instruction cannot be separated and considered apart from the whole. Kortz v. Guardian Life Ins. Co., 10 Cir., 144 F.2d 676. The court in the charge given to the jury said that the burden was "upon the government to prove, beyond a reasonable doubt, every material allegation of the indictment." The essential elements of the indictment were then outlined and the term "reasonable doubt" carefully defined. In the supplemental instruction given at the instance of defendant's counsel the court by reference thereto amended the statement of the essential elements of the indictment, each of which the jury had already been told must be established by the government beyond a reasonable doubt. When the whole instruction including the supplemental instruction, supra, is considered there can be no doubt that the jury understood that ownership of the stolen cattle was required to be established by the same degree of proof necessary to

establish all other essential elements of the indictment.

The rights of the defendant were carefully protected by the court throughout the trial. The judgment appealed from is accordingly affirmed.