## QUIRK v. UNITED STATES.
### No. 13448.

Circuit Court of Appeals, Eighth Circuit.
April 24, 1947.

C. I. McNutt, of Des Moines, Iowa (John Connolly, Jr., of Des Moines, Iowa, on the brief), for appellant.

Tobias E. Diamond, U. S. Atty., of Sioux City, Iowa (Wm. B. Danforth, Asst. U. S. Atty., of Sioux City, Iowa, on the brief), for appellee.

Before SANBORN, WOODROUGH, and JOHNSEN, Circuit Judges.

WOODROUGH, Circuit Judge.

Archie Quirk appeals to reverse a judgment of conviction and sentence for conspiracy to violate provisions of Sec. 4 of the Emergency Price Control Act, 50 U.S.C.A.Appendix, § 904, and Food Products Regulation No. 2 (9 F.Reg. 8304) as amended (10 F.Reg. 2083). He was indicted with seven others but tried separately on his plea of not guilty. The charge was that during the period of January 1, 1946 to May 1, 1946, appellant and the others in violation of 18 U.S.C.A. § 88, agreed and conspired to purchase field corn and to pay therefor large sums of money in excess of the ceiling price, and that in furtherance of the conspiracy and to effect its objects the parties purchased large quantities of corn for which they paid and caused to be paid sums in excess of the ceiling price. The indictment charged four overt acts, to wit: (1) That defendant Schulman mailed large sums of money in the form of checks to Quirk at Odebolt, Sac County, Iowa, and that the checks were to be cashed and used to purchase corn in carload lots in excess of maximum ceiling prices; (2) that Quirk received the checks, cashed them, delivered the money to the other codefendants and instructed them to purchase corn in carload lots and pay sums in excess of the maximum ceiling price for the corn; (3) that such codefendants received and accepted the money, purchased the carload lots of corn from certain persons and grain elevators and paid for the corn sums in excess of ceiling prices, and (4) that defendant Quirk paid to defendant Byerly $500 and instructed Byerly to purchase corn in carload lots and pay $100 for each carload to be shipped to such consignee as Quirk might designate, to the account of the Humphrey Grain Elevator of Carroll, Iowa, the payments to be in addition to the ceiling price for the corn, and that defendant Byerly complied with the instruction.

The appellant offered no evidence in his own behalf and the case was submitted on that introduced by the government. It was established that in January 1946 defendant Schulman, a Chicago processor of corn syrup products, telephoned Quirk, to whom he had been referred by a third party, and requested Quirk to procure corn to be shipped to certain refineries which would process it and supply Schulman with syrup. The two agreed that Quirk would receive a "fee" of $300 per car for procuring the corn. This was in addition to the ceiling price for the corn which would be paid by the refineries. Under this agreement and within the dates of the alleged conspiracy, Quirk received from Schulman checks totalling $8,400 which represented his "fee" for obtaining the shipment of 28 cars of

corn. The refineries received the corn and paid the ceiling price therefor.

The evidence further established that as early as November 1945, Quirk had talked with codefendant Byerly about obtaining corn and offered to give him $100 per car and to give $100 per car to grain dealers for corn obtained by Byerly, and that Byerly said he would "think it over." About the time of Quirk's conversation with Schulman in January 1946, Quirk again contacted Byerly and also contacted defendant Schrooten and these two agreed to procure corn to be purchased and shipped according to Quirk's directions. Quirk gave Byerly $500 in cash with which to induce shipment of corn by dealers, and pursuant to Quirk's instructions Byerly proceeded to a point in Nebraska where he met and conferred with Schrooten. Byerly and Schrooten proceeded to deal for corn and during the period covered by the alleged conspiracy they procured approximately 40 cars of corn which were sold and shipped to the account of the Humphrey Grain Company, according to Quirk's instructions. The shippers received the ceiling price from the grain company, and in addition received $100 per car from Byerly or Schrooten for shipping the corn. The evidence showed that on various occasions Quirk telegraphed money to Byerly and Schrooten who delivered part of it to the grain dealers and kept at the rate of $100 per car themselves.

■ Although the transactions between Quirk and Schulman involving the 28 cars of corn occurred during the same period of time that Schrooten and Byerly were soliciting and obtaining the 40 cars of corn for Quirk, there was no affirmative evidence that any particular cars of corn obtained by Schrooten and Byerly were shipped to the refineries which Schulman had named to Quirk as the refineries which would supply Schulman with syrup. Nor was there evidence that Byerly and Schrooten had any acquaintance with Schulman or knowledge of Quirk's dealings with him. These circumstances are strongly relied on by appellant and are the predicate for several specifications of error. The point was raised first in connection with admission of evidence, later in connection with defend-

ant's motion for directed verdict, and finally in connection with the sufficiency of the instructions. Appellant takes the position that because of absence of evidence connecting Quirk's transactions with Schulman and Quirk's transactions with Byerly and Schrooten, there was an absolute failure to prove an overt act to effect the object of the charged conspiracy. Appellant's argument appears to be based on the assumption that Schulman was the key figure in the conspiracy charged in the indictment. We deem this assumption to be erroneous, for the record convinces that defendant Quirk was the dominant actor around whom the prosecution of the conspiracy revolved. And as we view the record we fail to discern a basis for holding that absence of evidence affirmatively connecting Quirk's transaction with Schulman on the one hand, with Quirk's transactions with Schrooten and Byerly on the other hand, is fatal to conviction of Quirk. We think that evidence of appellant's guilt was sufficient for the jury, whether the case is viewed as involving a single general conspiracy as alleged, with Quirk as the hub, or as involving separate conspiracies with Quirk involved in each.

■ The jury might reasonably infer that the acts of Quirk in his dealings with Byerly and Schrooten were in furtherance of his agreement to procure corn for Schulman, and that the acts of each of the parties were done in furtherance of a general plan, scheme and agreement of such parties to violate the applicable price regulations. The facts in evidence fully justify the inference by the jury that a conspiracy arose when Quirk offered to procure corn for a fee of $300 per car and Schulman agreed to pay, even though there was no direct evidence that the parties mutually agreed that part of the so-called fee was to be used to pay the seller an amount over the ceiling price as an inducement to sell the corn. As stated in United States v. Manton, 2 Cir., 107 F.2d 834, 839: "It is not necessary that the participation of the accused should be shown by direct evidence. The connection may be inferred from such facts and circumstances in evidence as legitimately tend to sustain that inference. Indeed, often if not generally, direct proof

of a criminal conspiracy is not available and it will be disclosed only by a development and collocation of circumstances. In passing upon the sufficiency of the proof, it is not our province to weigh the evidence or to determine the credibility of witnesses. We must take that view of the evidence most favorable to the government and sustain the verdict of the jury if there be substantial evidence to support it. Hodge v. United States, 6 Cir., 13 F.2d 596; Fitzgerald v. United States, 6 Cir., 29 F.2d 881."

Further, the jury might well conclude from the facts and circumstances proved that Byerly and Schrooten joined the conspiracy and committed acts in furtherance thereof. The evidence is clear and undenied that Byerly and Schrooten solicited and obtained corn for Quirk and that they had knowledge that Quirk had orders for corn and was obtaining it for some third person. That Byerly and Schrooten were not personally acquainted with Schulman and had no particular knowledge of his part in the conspiracy is of no consequence. Martin v. United States, 10 Cir., 100 F.2d 490. As stated in the Martin case, pages 495, 496: "Concerning the sufficiency of the evidence, the essence of the crime of conspiracy is two or more persons combining and confederating with the intent and purpose of committing a public offense by doing an unlawful act or doing a lawful act in an unlawful manner. The agreement need not be in any particular form. It is enough if the minds of the parties meet and unite in an understanding way with the single design to accomplish a common purpose, and the union of the minds may be proved by circumstantial evidence. The agreement may be inferred from statements, acts, and circumstances. It is frequently not susceptible of direct proof. Parnell v. United States, 10 Cir., 64 F.2d 324; Telman v. United States, 10 Cir., 67 F.2d 716; Brayton v. United States, 10 Cir., 74 F.2d 389; Jaramillo v. United States, 10 Cir., 76 F.2d 700; Marx v. United States, 8 Cir., 86 F.2d 245; Marino v. United States, 9 Cir., 91 F.2d 691, 113 A.L.R. 975; Robinson v. United States, 5 Cir., 94 F.2d 752. And it is not necessary that all of the parties be personally acquainted with each other. Neither is it requisite that one have direct contact with all others. It suffices if with knowledge that others have combined to violate the law, one knowingly co-operates in some affirmative manner to further the purpose of the conspiracy. Booth v. United States, 10 Cir., 57 F.2d 192; Wilder v. United States, 10 Cir., 100 F.2d 177, decided November 28, 1938; Allen v. United States, 7 Cir., 4 F.2d 688. The evidence adduced at the trial with the inferences and deductions reasonably to be drawn from it was sufficient to warrant the jury in finding that an agreement existed to violate the statute and that with knowledge of that fact each of the appellants affirmatively co-operated to further the unlawful design." See also Direct Sales Co. v. United States, 319 U. S. 703, 63 S.Ct. 1265, 87 L.Ed. 1674.

Nor was it necessary to trace the particular corn obtained by Byerly and Schrooten to the ultimate purchasers. In a conspiracy prosecution it is not necessary to prove that the object of the conspiracy was accomplished. Marx v. United States, 8 Cir., 86 F.2d 245, 248; United States v. Rabinowich, 238 U.S. 78, 86, 35 S.Ct. 682, 59 L.Ed. 1211. It is the partnership in criminal purpose that constitutes the offense of conspiracy and proof of the offense is complete on establishing the agreement and an overt act of one of the conspirators in furtherance thereof. United States v. Kissel, 218 U.S. 601, 608, 31 S.Ct. 124, 54 L.Ed. 1168; United States v. Manton, supra.

But if the evidence is viewed as establishing that Quirk, in addition to his agreement with Schulman for the procurement of corn, also had separate and distinct agreements of the same kind with others it does not put Quirk in a better position in this prosecution. His offense is his conspiring with others to violate the law against purchasing and paying for corn above the ceiling price, and that more persons appear to have been involved with him than are charged in the indictment does not present such a variance from the indictment against him as to inure to his advantage. Though the prosecutor might have elected to charge Quirk's agreements with the others as additional separate crimes of conspiracy on his part to violate

the same law, appellant certainly has not been prejudiced or affected as to any substantial right in this case because that was not done. Judicial Code, Sec. 269 as amended, 28 U.S.C.A. § 391; Berger v. United States, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314. Having obtained money from Schulman (and it may be from others), appellant drew the defendants Byerly and Schrooten into conspiracy with him, and such conspiracy was consummated by their overt acts to effect the conspiracy's object of violating the Price Control Law. In all the purchases shown in the evidence Quirk, together with Byerly or with Schrooten, by their efforts in the field, accomplished the purpose of effecting the purchase and sale of corn at illegal prices. As stated in the Berger case (295 U.S. p. 82, 55 S.Ct. 630): "The true inquiry, therefore, is not whether there has been a variance in proof, but whether there has been such a variance as to 'affect the substantial rights' of the accused. The general rule that allegations and proof must correspond is based upon the obvious requirements (1) that the accused shall be definitely informed as to the charges against him, so that he may be enabled to present his defense and not be taken by surprise by the evidence offered at the trial; and (2) that he may be protected against another prosecution for the same offense. Bennett v. United States, 227 U.S. 333, 338, 33 S.Ct. 288, 57 L.Ed. 531; Harrison v. United States, 6 Cir., 200 F. 662, 673; United States v. Wills, 3 Cir., 36 F.2d 855, 856, 857. Cf. Hagner v. United States, 265 U.S. 427, 431-433, 52 S.Ct. 417, 76 L.Ed. 861."

Kotteakos v. United States, 328 U.S. 750, 66 S.Ct. 1239, relied on by appellant, does not support his position here. There the indictment charged one general conspiracy to violate the National Housing Act by inducing lending institutions to make loans to be offered to the Federal Housing Administration for insurance on the basis of fraudulent and false information. The evidence, however, showed numerous conspiracies, completely disconnected except for the fact that all groups of conspirators utilized a single broker to handle fraudulent applications. The broker, who was the key figure and the one and only person in that case who had the broad and general purpose charged in the indictment, pleaded guilty. The jury was instructed that there was only one conspiracy and that acts and declarations of any one conspirator bound all. In those circumstances the Supreme Court found on the review of the conviction of other defendants, that there was plain error as to them which could not be regarded as harmless. But if there may be said to be separate transactions in the instant case, appellant himself is involved as the prime conspirator and actor in all of them. He has not been prejudiced by any variance and is in no position to complain that others were not charged with him.

Appellant assigns as error admission of testimony of codefendants Schrooten and Byerly concerning conversations they had with appellant during the summer of 1946, after the conspiracy had terminated. The testimony was to the effect that Quirk at that time informed Schrooten and Byerly that government inspectors were investigating the case and that Quirk told Schrooten not to tell the inspectors about the "corn deal", and told Byerly he would not have to talk to them. We recognize the rule that after the termination of a conspiracy, admissions of one conspirator by way of narrative of past events are inadmissible against the others. Brown v. United States, 150 U.S. 93, 98, 14 S.Ct. 37, 37 L.Ed. 1010; Logan v. United States, 144 U.S. 263, 309, 12 S.Ct. 617, 36 L.Ed. 420. But the testimony complained of was not of the type precluded by the rule and was admissible for what value it might have as an admission against interest by appellant. Adamson v. United States, 8 Cir., 184 F. 714, 715.

Appellant contends that prosecution for conspiracy was barred because the indictment was returned July 30, 1946, after termination of the Emergency Price Control Act on June 30, 1946. The Act contains a saving clause providing: "* * * except that as to offenses committed, or rights or liabilities incurred, prior to such termination date, the provisions of this Act and such regulations, orders, price schedules, and requirements

shall be treated as still remaining in force for the purpose of sustaining any proper suit, action, or prosecution with respect to any such right, liability, or offense." 50 U.S.C.A.Appendix, § 901.

Appellant argues that only prosecutions for substantive offenses committed while the Act was in force are within the orbit of the saving clause, and that the clause does not apply to a prosecution for conspiracy to violate the Act. We must give to the language of the saving clause a reasonable construction calculated to effectuate the purpose and intent of Congress. United States v. American Trucking Ass'ns, Inc., 310 U.S. 534, 542, 60 S. Ct. 1059, 84 L.Ed. 1345; Eastman v. United States, 8 Cir., 153 F.2d 80. The declared intention of Congress was to treat the Act as remaining in force after termination date for the purpose of sustaining any prosecution with respect to an offense committed prior to termination date. This language is broad and inclusive and is effective to preserve the right to prosecute for conspiracy as well as for a substantive offense. The present prosecution under the conspiracy statute, in so far as it is dependent on the Emergency Price Control Act, is a prosecution "with respect to" an offense committed prior to termination date within the saving clause. The function of a saving clause is to preserve something from immediate interference, Knickerbocker Ice Co. v. Stewart, 253 U.S. 149, 162, 40 S.Ct. 438, 64 L.Ed. 834, 11 A.L.R. 1145, and we fail to perceive a basis for distinction in this regard between substantive offense and conspiracy. A contrary holding would unduly limit the language of the saving clause and would tend to frustrate the avowed purpose of Congress.

[11] The appellant assigns as error the action of the trial court in giving instructions based on the so-called evasion section promulgated by the Administrator of Price Control, 10 F.Reg. 2083, which provides: "Sec. 3. Evasion. The price limitations set forth in this supplement shall not be evaded whether by direct or indirect methods, in connection with any offer, solicitation, agreement, sale, delivery, purchase, or receipt of, or relating to corn, alone or in conjunction with any other commodity, or by way of commission, service, transportation or other charge, or discount, premium or other privilege, or by tying agreement, or other trade understanding, or by any other means."

The objection to the instructions is that the court undertook to instruct on an administrative order or ruling and erroneously informed the jury that such order was the law. The Price Control Act authorized the Administrator to establish such maximum prices as would be fair and equitable and would effectuate the purposes of the Act, and to promulgate such regulations as he deemed necessary to prevent circumvention of price regulations (50 U.S.C.A.Appendix, § 902 (a, g), and made it an offense to violate such a regulation (50 U.S.C.A.Appendix, §§ 904, 925 (b). Thus the regulation which formed the basis of the challenged instructions had the force of law and the instructions were properly given. M. Kraus & Bros., Inc., v. United States, 327 U.S. 614, 619-621, 66 S.Ct. 705.

We do not find reversible error in the record and the judgment of conviction is affirmed.