Oliver MARBS, Appellant,

v.

UNITED STATES of America, Appellee.

Emil SARKIS, Appellant,

v.

UNITED STATES of America, Appellee.

Nos. 15735, 15736.

United States Court of Appeals Eighth Circuit.

Dec. 27, 1957.

Rehearing Denied Jan. 20, 1958.

Transportation Co., 338 Pa. 161, 12 A.2d 559; Van v. Teche Lines, Inc., La.App., 164 So. 267.

Merle L. Silverstein, St. Louis, Mo. (Rosenblum & Goldenhersh, St. Louis, Mo., were with him on the brief), for appellant Oliver Marbs.

Norman S. London, St. Louis, Mo. (Mark M. Hennelly, St. Louis, Mo., was with him on the brief), for appellant Emil Sarkis.

John A. Newton, Asst. U. S. Atty., St. Louis, Mo. (Harry Richards, U. S. Atty., Wayne H. Bigler, Jr., and Robert E. Brauer, Asst. U. S. Attys., St. Louis, Mo., were with him on the brief), for appellee.

Before GARDNER, Chief Judge, and WOODROUGH and VAN OOSTER-HOUT, Circuit Judges.

## GARDNER, Chief Judge.

Appellants Oliver Marbs and Emil Sarkis with one William C. Schulze were indicted on an indictment containing three counts. The first count charged appellants Marbs and Sarkis with offering a bribe to a United States Internal Revenue Agent, the second count charged appellants Marbs and Sarkis with giving such bribe to said agent, while the third count charged Marbs, Sarkis and Schulze with conspiring to offer and give such bribe. At the close of the government's testimony the government dismissed Count I of the indictment as to appellant Sarkis alone.

At the close of all the testimony each of the appellants and the defendant Schulze moved for judgment of acquittal, which motions were denied. The jury found appellant Marbs guilty as charged on all three counts, appellant Sarkis guilty on Counts II and III, and defendant Schulze guilty on Count III of the indictment. After verdict each of the defendants moved for judgment of acquittal notwithstanding the verdict or in the alternative for a new trial. These motions too were denied and judgment and sentences were thereupon entered pursuant to the verdicts of the jury.

The defendant Schulze has not appealed. The appellants have filed separate briefs. Appellant Marbs seeks reversal on the ground of entrapment. Appellant Sarkis seeks reversal on substantially the following grounds: (1) the court erred in admitting evidence of acts and declarations of alleged co-conspirators and in failing to instruct the jury to disregard such testimony, and (2) the court erred in denying his motion for judgment of acquittal interposed at the close of all the evidence and his motion for judgment notwithstanding the verdict or in the alternative for a new trial.

In his brief appellant Marbs does not challenge the sufficiency of the evidence to warrant the jury in finding him guilty as charged on all three counts of the indictment. He, however, contends that the court erred in its instructions to the jury on the question of entrapment. On the question of entrapment the court instructed the jury as follows:

"Defendant Marbs in this case has claimed that he was entrapped into doing the acts charged against him. Entrapment is recognized as a valid defense available to a person charged with the commission of a public offense under certain circumstances.

"If you find that a criminal design originated in this case, not with the defendants, but was conceived in the minds of the government witnesses, and the defendant Marbs was by persuasion, deceitful representation or inducement lured into the commission of a criminal act, then you should return a verdict of not guilty as to defendant Marbs. On the other hand, if you find that the criminal design, if there was one, originated with one or more of the defendants, then the defense of entrapment does not apply.

"Defense of an unlawful entrapment has been claimed by defendant Marbs. The Government has the burden of proving beyond a reasonable doubt that there was not an unlawful entrapment."

It is contended by Marbs that although the evidence was sufficient to prove that the criminal design originated with him there was evidence warranting the jury in finding that he abandoned this design and that thereafter the government agents induced him to execute his original design. An examination of the objection to the instruction interposed reveals that the question now argued was not specifically raised by the objection interposed. Nothing in the objection suggests that the court omitted to instruct the jury on the

question of appellant Marbs' alleged abandonment of his design. The objection contains the following words:

"Defendants object to the giving of Government's Requested Instruction No. 4, on the grounds that that instruction eliminates the defense of entrapment, and even though the Court subsequently instructed the jury on the defense of entrapment that particular portion was omitted from this instruction which is in effect a verdict directing instruction on Count Two of the Indictment.

"\* \* \* \* \* \*

"The defendant Marbs will also object to the giving of the instruction on entrapment, it was unnumbered, because the instruction is inadequate to completely cover the defense particularly in that it excludes the application of entrapment on a certain contingency stated in the instructions, which contingency in and of itself is not sufficient to render the defense non-applicable."

■ Just what may have been in the mind of counsel in interposing the objection that "the instruction is inadequate to completely cover the defense particularly in that it excludes the application of entrapment on a certain contingency stated in the instructions, which contingency in and of itself is not sufficient to render the defense non-applicable" is not apparent. Rule 30, Federal Rules of Criminal Procedure, 18 U.S.C.A.; McDonough v. United States, 8 Cir., 248 F.2d 725; McKenna v. United States, 8 Cir., 232 F.2d 431; Armstrong v. United States, 8 Cir., 228 F.2d 764; Schuermann v. United States, 8 Cir., 174 F.2d 397. Rule 30 of the Federal Rules of Criminal Procedure, supra, in part provides that:

"\* \* \* No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he ob-

jects and the grounds of his objection."

This objection certainly did not call to the attention of the court nor opposing counsel that the instruction was objectionable because it did not cover the possibility that the appellant Marbs after having originated the criminal design may have repented. It is to be observed too that no instruction was requested specifically covering the question of alleged abandonment of his original criminal design. Conceding that "no specific case in point can be offered to the Court in support of appellant's contention", he cited the following authorities as enlightening by way of analogy: Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413; Butts v. United States, 8 Cir., 273 F. 35, 18 A.L.R. 143; Newman v. United States, 4 Cir., 299 F. 128. Since the case was submitted appellant Marbs calls our attention to the recent case of United States v. Klosterman, 3 Cir., 248 F.2d 191, 192, and great reliance is placed on this decision. The case is very readily distinguishable in its facts from the instant case. For instance, the issue presented in United States v. Klosterman, supra, is stated by the court as follows:

"\* \* \* whether the criminal intent proceeded from government agents or whether these agents simply afforded opportunities to those already disposed to the alleged criminality."

Conceding that the issue of entrapment is usually a jury question the court states that the question becomes one of law where the evidence points to only one conclusion. In the course of the opinion it is said, inter alia:

"The inordinate amount of persuasion of Deeney by King indicates two elements in this case. It clearly discloses that Deeney was sincere in his attempt to abandon his original plan. It shows also that the criminal design and intent for the commission of the actual bribery *originated not with him but rather*

*with the government agents who engineered the persuasion and solicitation."* (Italics supplied.)

Again, the court said:

"We do not think that the degree of persuasion is significant where the first approach is made by the agent of the law to an apparently innocent man."

It is very clear that the criminal design in United States v. Klosterman, supra, originated not with the defendant but with the government agents. After defendant there had been induced to enter the scheme by government agents he then attempted to withdraw. In the instant case, however, there is nothing to indicate that the original criminal design was that of the government agents and, as heretofore noted, it is conceded that the testimony was sufficient to warrant the jury in finding that the criminal design originated with appellant Marbs and we must assume that the jury so found. Neither is there any evidence supporting the contention that Marbs repented or by act or deed indicated that he had abandoned his original criminal design. It was he who delivered the bribe money, which he had presumably secured from appellant Sarkis, to the government agent. We think the court's instruction here challenged correctly stated the applicable law. The authorities cited by appellant Marbs are not to the contrary.

 It is to be noted too that Marbs was convicted on Count I of the indictment of offering a bribe to an Internal Revenue Agent. There is not a scintilla of evidence indicating that he was entrapped into committing this offense; neither was there any evidence tending to show that he was entrapped into conspiring to offer the bribe as charged in Count III of the indictment upon which he was convicted and as one sentence was imposed against him on all counts, which sentence was within the maximum permissible for any of the separate counts and as the conviction was clearly sustainable as to Counts

I and III, the judgment should be affirmed. Hansbrough v. United States, 8 Cir., 156 F.2d 327. While the evidence in this case does not sustain the defense of entrapment the unseemly zeal with which the government agents sought to encourage defendants to pay a bribe is not to be commended.

 Appellant Sarkis by various motions laid the foundation for challenging the sufficiency of the evidence to sustain the verdict as to him. As the jury found in favor of the government we must view the evidence in a light most favorable to the government as the prevailing party. The government is entitled to the benefit of all such favorable inferences as may reasonably be drawn from the facts proven and if when so viewed the evidence was such that reasonable minds might differ then the question as to the guilt or innocence of defendants was one of fact to be decided by the jury and not one of law to be determined by the court. Connelly v. United States, 8 Cir., 249 F.2d 576; Brennan v. United States, 8 Cir., 240 F.2d 253; Peters v. United States, 8 Cir., 160 F.2d 319. There is no material dispute in the evidence as appellants offered no evidence.

Appellant Sarkis' income tax returns for the years 1952 and 1953 were being investigated by Internal Revenue Agents. Internal Revenue Agent Brown was assigned to investigate these tax returns and on October 26, 1954, called Sarkis to arrange an interview. In response to this request for an interview Sarkis, accompanied by one Benny Moran, an accountant, called at Internal Revenue Agent Brown's office to discuss the returns questioned. During the conference Brown requested that Sarkis allow him to examine the contents of his safety deposit box. The request was granted and two days later Sarkis showed Brown the contents of the safety deposit box. Some two months later Brown was approached by appellant Marbs, a former Internal Revenue Agent, who informed Brown that he was to represent appellant

Sarkis in his tax matters and asked Brown what would be necessary to bring the examination to a hurried close. Brown replied that anything pertinent to the tax items in the years involved, plus signed net worth statements, would be helpful. Marbs said he would see what could be done about it. On March 1, 1955, Brown saw Marbs and asked if he had obtained the information desired and Marbs replied that he had not and that in all probability he would not obtain the information as he felt that Brown was just "fishing". Two days later Brown was approached by defendant Schulze, an Internal Revenue Agent, who inquired whether Brown was working on a case in which Marbs was interested. Schulze told Brown that Marbs had inquired as to the possibility of closing the case by accepting the return as filed and further stated, "I asked Ollie what was in it for Brown, and he said five hundred". Schulze further stated to Brown, "Five hundred dollars would make a nice down payment on a new automobile, ought to think it over". Following this conversation Brown reported the incident to his supervisor whereupon the matter was taken up with the Intelligence Division.

On March 22, 1955, Brown was again approached by Schulze who asked if he had given further consideration to the matter they had discussed. Schulze stated to Brown that he (Schulze) was not going to have anything more to do with the transaction but that if Brown wished to pursue it further he would have Marbs call Brown at a later time. On May 16, 1955, Brown called the home of Sarkis. Sarkis was not at home at the time but Brown left his telephone number and later that day Sarkis called Brown. Brown asked Sarkis whether Moran or Marbs was representing him and Sarkis said, "Well, I will let you know". The following day Marbs called Brown and stated that he was representing both Emil Sarkis and his brother, Raymond Sarkis. On May 24, 1955, Brown and Marbs met and Marbs stated that although he was representing both Emil and Raymond Sarkis at present he was desirous of closing only the case of Emil Sarkis. Brown stated to Marbs that he could probably arrange a "No Change" report if he so desired. Brown was told by Marbs that the money had been placed in a safe of a friend of Marbs and Sarkis, and that when Brown mailed the "No Change" letter to Sarkis, Sarkis would call this friend and he in turn would call Marbs to pick up the money and turn it over to Brown. On May 25, 1955, Marbs again arranged to meet Brown and did so on the morning of May 26th on a street near the Federal Building. Brown there stated that Schulze had been the only one who had mentioned a fixed amount of money for filing the "No Change" report. Marbs there stated that the amount for doing that would be $500.00. On June 3, 1955, Brown arranged to mail the "No Change" report to Sarkis and on June 7th mailed the report as agreed. Brown was not immediately paid for mailing the report and there were several conversations between him and Marbs. On June 13, 1955, Marbs called Brown and told him to call Sarkis who in turn would call Marbs who could then get a release on the money for payment of Brown. Brown then called the home of Sarkis on June 13, 1955, but Sarkis was not there. Later Sarkis called Brown and the following conversation took place:

"Brown: Brown speaking.

"Party Calling: Hello, Mr. Brown?

"Brown: Yes.

"Party Calling: This is Sarkis.

"Brown: Emil?

"Party Calling: Yes, sir.

"Brown: How are you?

"Party Calling: All right. How are you?

"Brown: I was just wondering, did you ever get that 'No Change' letter? I mailed that.

"Party Calling: Yes, I got it a couple of days ago, Mr. Brown.

"Brown: I talked to Marbs. He didn't get an O.K. to release that money.

"Party Calling: That what?

"Brown: I thought—were you going to call Marbs?

"Party Calling: I'll get ahold of Marbs. I'll see what he—I'll talk to him.

"Brown: O.K. Then you'll call Marbs?

"Party Calling: Right. Is he home now?

"Brown: I talked to Marbs about fifteen, twenty minutes ago, I think. He was at home.

"Party Calling: O.K. I'll call him there.

"Brown: All right.

"Party Calling: Fine."

Later on the same day Marbs called Brown and arranged to meet him on the following day. On the next morning, June 14, 1955, Marbs called Brown and arranged to meet him at a street corner near the Federal Building. Marbs appeared at the appointed place and handed Brown an envelope containing $400.00, explaining that the additional $100.00 previously agreed to would be paid to Brown at a later date.

From these undisputed facts and circumstances could the jury reasonably infer that in offering and in giving a bribe to Brown, Marbs was representing Sarkis? Sarkis knew that his tax returns for the years in question were being seriously investigated. At the first conference between Sarkis and Brown, Brown asked to examine Sarkis' safety deposit box. After a two day delay Brown examined the contents of the box, with what result is not disclosed by the record but the two days elapsing between the request and the examination, of course, gave ample opportunity to remove from the box anything of an incriminating nature. Some considerable time later Marbs met Brown and asked him if he was examining Sarkis' income tax returns, and on being advised by Brown that he was, Marbs inquired what information would be necessary to close out the examination of the returns. Brown suggested that he furnish anything pertinent to the tax items for the years involved and that signed net worth statements by Sarkis would be helpful. Sometime later Brown was called upon by defendant Schulze who inquired whether Brown was working on a case in which Marbs was interested, and on being advised that he was, told Brown that Marbs had inquired as to the possibility of closing the case by accepting the returns as filed and that, "I asked Ollie what was in it for Brown and he said five hundred". Schulze further stated to Brown, "Five hundred dollars would make a nice down payment on a new automobile, ought to think it over". This apparently was the first suggestion of bribery and Brown immediately reported the matter to his superior. Some two weeks later Schulze again approached Brown and asked if he had given further consideration to the matter they had discussed. At that time Schulze stated to Brown that he was not going to have anything more to do with the transaction but that if Brown wished to pursue it further he would have Marbs call Brown at a later time. In these circumstances Brown called Sarkis and inquired whether Marbs or Moran represented him. Sarkis did not directly answer the question but said, "Well, I will let you know", and, apparently agreeable to Sarkis' promise to let Brown know who represented him, Marbs called Brown on the following day and reported that he was representing Sarkis. A few days later Brown and Marbs met and at that meeting Marbs suggested that if a "No Change" letter were mailed to Sarkis, Sarkis would call a friend who would release money for payment of Brown. At a subsequent meeting Brown advised Marbs that Schulze had mentioned a fixed amount in regard to filing the "No Change" report and Marbs definitely stated that the amount for doing this would be $500.00. As the money prom-

ised was not presently forthcoming Brown telephoned Sarkis, whom Brown had reason to believe under the circumstances was the person for whose benefit the transactions were being negotiated and who presumably was the source from which the money would be forthcoming, and inquired whether he had received a copy of Brown's favorable report and on being advised that it had been received Brown said that he had talked to Marbs and that Marbs had apparently not received "an O.K. to release that money". Thus, Sarkis knew that Marbs had promised on his behalf money for a favorable report. The money had not been paid at this time. Sarkis made no protest with reference to the money transaction but instead said, "I'll get ahold of Marbs". The jury might well have inferred that he succeeded in getting hold of Marbs, as later the same day Marbs called Brown and arranged to deliver the bribe money the following day and this was done. Sarkis knew that Marbs was claiming to represent him, he knew that Marbs on his behalf had promised a bribe to Brown, he made no protest nor denial of Marbs' authority to represent him, and the money was actually paid by Marbs. From the undisputed facts and surrounding circumstances we think the jury was warranted in inferring that Marbs in all these transactions was representing Sarkis and that Marbs, with Sarkis' money and with Sarkis' acquiescence and consent, paid Brown money intended as a bribe.

Appellant Sarkis cites a number of authorities which are readily distinguishable in their facts from the instant case. It is his contention that the evidence is insufficient to warrant the jury in finding Sarkis guilty on the conspiracy count and relies strongly on what is said by us in Egan v. United States, 8 Cir., 137 F.2d 369, 378. In that case we said, inter alia:

"Where the accused is not in some * * * interested relation to the conspirators * * * mere knowledge * * * will be insufficient,

in the absence of some word or deed, to connect him with the conspiracy. * * * On the other hand * * * if he has some interest in the success of the conspirators * * * if the conspirators inform him of their plan and keep him advised of the steps taken by them to attain their purpose, and he by his approval stimulates their activities * * * then a jury upon evidence of such facts would be warranted in finding him guilty."

In the instant case, manifestly the activities were for the benefit of Sarkis since they were calculated to clear him of tax liability and, as already stated, his knowledge and participation in the events was a reasonable inference for the jury to make from the record presented. Neither does the decision in United States v. Carengella, 7 Cir., 198 F.2d 3, support counsel's contention. In that case a tavern owner received stolen liquor from a person and arranged to pay for it a few days later. At the appointed time the defendants came to get the money. The Court of Appeals reversed the lower court on this record because there was nothing to connect the defendants with the illegal sale transaction. In the instant case, however, Sarkis was not some outsider. The sole object of the conspiracy and the bribery was to aid him. Further, the conversation between Sarkis and Brown, together with the subsequent events, offer a reasonable basis for the conclusion of knowledge on the part of Sarkis. This was the missing element in the cited case. On this phase of the case we conclude that the evidence, if admissible, was sufficient to sustain the verdict.

■■ It is contended that the court erred in admitting extrajudicial acts and declarations of Marbs and Schulze as against Sarkis. These conversations have already been set out in the course of this opinion. The objection was that they were hearsay as to Sarkis. They were hearsay unless a conspiracy existed

among the defendants, and these so-called acts and declarations occurred during the existence of the conspiracy and in furtherance of its purposes. If a conspiracy existed there can be no doubt that these acts and declarations were in furtherance of its purposes, so we may confine our consideration to the sufficiency of proof to warrant the jury in finding that a conspiracy existed. If a conspiracy existed then the acts and delarations of any conspirator were admissible as to all conspirators. We think the two conversations between Brown and Sarkis heretofore discussed in this opinion were a sufficient foundation to warrant admission of other evidence of conspiracy. When Sarkis was questioned by Brown with reference to the payment of money promised by Marbs his reaction was not one of repudiation, but he said he would get hold of Marbs. This, in effect, was a ratification of Marbs' acts rather than a repudiation, and it is significant that Marbs proceeded to carry out the scheme of bribery of which Sarkis had been given notice by Brown. Proof of a conspiracy to commit a crime is rarely susceptible of direct evidence, but it may be established, as any other fact, by circumstantial evidence reasonably warranting an inference. In Galatas v. United States, 8 Cir., 80 F.2d 15, 22, we considered the question of the sufficiency of the evidence to sustain a finding by the jury that a conspiracy to commit a crime had been proven. In that case we collated many of our own decisions on this question. In the course of the opinion we said:

"Conspiracy is rarely susceptible of direct and positive proof, but it may be proven by circumstantial evidence. Goode v. United States, 8 Cir., 58 F.2d 105, 107; Cooper v. United States, 8 Cir., 9 F.2d 216, 224; Smith v. United States, 8 Cir., 157 F. 721, 728; Feigenbutz v. United States, 8 Cir., 65 F.2d 122, 124.

"In Goode v. United States, supra, it is said: 'The agreement need not be in any particular form, but it is sufficient that the minds of the parties met understandingly. A mutual implied understanding is sufficient so far as the combination or confederacy is concerned; and, in fact, the agreement is generally a matter of inference, deduced from the acts of the persons accused, which are done in pursuance of an apparent criminal purpose. It is not necessary to prove that the defendants actually agreed in terms to adopt the unlawful purpose and to pursue it by common means. A conspiracy is rarely susceptible of proof by direct evidence, but must be proved by circumstantial evidence. It may be deduced from the conduct of the parties and the attending circumstances.'

"In Cooper v. United States, supra, it is said, concerning the offense of conspiracy: 'It is practically always established by circumstantial evidence, and this method in no sense amounts to the building of one presumption upon another.'

"In Smith v. United States, supra, it is said: 'The effects and results of a conspiracy can be observed and proved, but rarely can one get a glimpse or make proof of the secret conferences which inaugurate it. For these manifest reasons proof of a criminal combination to do an unlawful act can rarely be made except by light reflected from its consequences or results.'

"In Feigenbutz v. United States, supra, this court, speaking through Judge Van Valkenburgh, said: 'Conspiracy is an offense which can ordinarily be established only by a great number of apparently disconnected circumstances. Necessarily the existence of the conspiracy in most cases can be made to appear only inferentially from the acts of the parties committed in furtherance thereof.'

"If the evidence is as consistent with the innocence of the defend-

ants as with their guilt, of course, no conviction can properly be had. Langer v. United States, 8 Cir., 76 F.2d 817. This court is not charged with the duty of considering conflicts in the evidence, credibility of witnesses, the plausibility of explanations offered by defendants, or the weight of the evidence. Its sole function in this regard is to determine whether there is substantial evidence to support the verdict. Cravens v. United States, 8 Cir., 62 F.2d 261; Burton v. United States, 202 U.S. 344, 26 S.Ct. 688, 50 L.Ed. 1057, 6 Ann.Cas. 362; Smith v. United States, 8 Cir., 50 F.2d 46; Webster v. United States, 8 Cir., 59 F.2d 583. The jury having found the defendants guilty, that view of the evidence and the inferences reasonably to be drawn therefrom must be taken which is most favorable to the government. Zottarelli v. United States, 6 Cir., 20 F.2d 795. Overt acts of the parties may properly be considered with other evidence and attending circumstances, in determining whether a conspiracy exists, and where the overt acts are of the character which are usually, if not necessarily, done pursuant to a previous scheme and plan, proof of the acts has a tendency to show such pre-existing conspiracy so that when proven they may be considered as evidence of the conspiracy charged Safarik v. United States, 8 Cir., 62 F.2d 892; Rand v. United States, 8 Cir., 77 F.2d 52.

"In McDonnell v. United States, 1 Cir., 19 F.2d 801, 803, speaking of the sufficiency of the evidence to connect a defendant with a conspiracy, the court approved an instruction which said: 'It is enough if a man, understanding that there is a crowd banded together to break the law, knowing in a general way what the purposes of the crowd are in that respect, becomes a member of it and acts with them to a greater or lesser extent.'

"In the instant case, the evidence, including the attending circumstances, all points to the irresistible conclusion that the defendants knew the purpose of all this activity with reference to the custody and apprehension of Nash. These activities could have had but one purpose and object—the escape of the prisoner, Frank Nash."

In Phelps v. United States, 8 Cir., 160 F.2d 858, 867, we said:

"Such a joining of intentions into a conspiracy may, and ordinarily only can, be established by inference from evidence of relationships and conduct and other probative circumstances."

See also Martin v. United States, 10 Cir., 100 F.2d 490; Quirk v. United States, 8 Cir., 161 F.2d 138; United States v. Pagano, 2 Cir., 224 F.2d 682. In Martin v. United States, supra, referring to the sufficiency of proof to establish a conspiracy to commit a crime the court among other things said [161 F.2d 141]:

"The agreement need not be in any particular form. It is enough if the minds of the parties meet and unite in an understanding way with the single design to accomplish a common purpose, and the union of the minds may be proved by circumstantial evidence. The agreement may be inferred from statements, acts, and circumstances. It is frequently not susceptible of direct proof."

In United States v. Pagano, supra, [224 F.2d 684] Judge Medina speaking for the court on the question of the sufficiency of the evidence to prove a criminal conspiracy, among other things said:

"It is elementary that no direct proof of agreement is essential in these conspiracy cases and that the evidence taken as a whole is the proper basis for the drawing of the necessary inferences."

■ In the instant case the court meticulously instructed the jury relative to the character of evidence admissible to establish the conspiracy charged. We conclude that considering all the facts and surrounding circumstances and considering the evidence on the issue as a whole it was sufficient to warrant the jury in drawing the inference that the defendants conspired and agreed together to commit the offense of bribery as charged in the third count of the indictment. It follows that there was no error in overruling the objections of appellants to admitting into evidence the extrajudicial acts and declarations of defendants Marbs and Schulze, nor in not striking them from the record, nor in not instructing the jury to disregard them.

We have considered all other contentions urged by the appellants and think them wholly without merit. The judgments appealed from are therefore affirmed.