Lewis Dowell NORTHCRAFT, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 16165.

United States Court of Appeals
Eighth Circuit.

Oct. 27, 1959.

Gene P. Graham, Independence, Mo., for appellant.

J. Whitfield Moody, Asst. U. S. Atty., Kansas City, Mo. (Edward L. Scheufler, U. S. Atty., Kansas City, Mo., was with him on the brief), for appellee.

Before GARDNER, VOGEL and VAN OOSTERHOUT, Circuit Judges.

GARDNER, Circuit Judge.

Appellant was indicted in an Indictment of sixteen counts charging him with the use of the mails of the United States in furtherance of a scheme to defraud, in violation of Section 1341, Title 18, United States Code. The scheme to defraud as alleged was repeated by reference in each count of the Indictment. Count One, which is typical of all the counts, charged in part as follows:

"That prior to the 7th day of December, 1954, and continuing to the date of this indictment, in the City of Kansas City, County of Jackson, Western Division of the Western District of Missouri, the defendant, Lewis Dowell Northcraft, devised and intended to devise a scheme and artifice to defraud purchasers of and advertisers in various printed matter, consisting principally of high school and college annuals, cook books, calendars, telephone book covers, farm directories and record and date books, and to obtain money and property by means of the following false and fraudulent pretenses, representations and promises, well knowing at the time that the pretenses, representations and promises would be false when made: The defendant, or his agents, under the name of Community Services, Inc., a corporation wholly owned and controlled by the defendant, and the name of House of Annuals, a fictitious name and style of Community Services, Inc., would induce such persons individually and in a representative capacity for various organizations to enter into a contract with the defendant or his company whereby defendant would furnish certain printed matter, consisting principally of high school and college annuals, cook books, calendars, telephone book covers, farm directories and record and date books, or other printed matter, for a sum of money to be determined by the amount of money received from the sale of advertising space in such annuals, cook books, calendars, telephone book covers, directories and record and date books, and the number of such items ordered; that defendant, or his agents, would assist individuals or organizations in the solicitation and sale of the advertising space and would participate in the collection of the proceeds of the advertising space sold, but that defendant and his company failed to furnish such annuals, cook books, calendars, telephone book covers, directories or record and date books in accordance with the representations and promises made by defendant.

"Pursuant to, and in furtherance of said scheme and artifice, defendant did receive from such persons or organizations money and property, which the defendant did fraudulently keep and use for his own; that at the time of such receipt and fraudulent use the defendant had no intention of performing any of his promises, representations or agreements with such persons or organizations, as the defendant then well knew; that the defendant received and kept such money and property

with the intent to defraud such persons and organizations."

The Count then alleges a specific instance of the use of the United States mails in furtherance of the alleged fraud.

The parties will be hereinafter referred to as they were designated in the trial court. The case was tried to the court and a jury. The Government introduced evidence tending to prove all the allegations of the various counts as to the carrying out of the alleged scheme to defraud and of the use of the mails in furtherance of that scheme.

It was the contention of defendant that he intended in good faith to perform the contracts and he offered evidence tending to show that from the various collections of money made by him he retained less than an amount sufficient to cover his living expenses and that he had done some work in fulfillment of each of the contracts. In addition to this evidence he introduced evidence of good character.

At the close of the Government's evidence in chief and again at the close of all the testimony defendant submitted a motion for judgment of acquittal, which motions were overruled and the cause was submitted to the jury on instructions to which defendant saved certain exceptions. Counts One and Two were dismissed by the Government at the close of its case. The jury returned a verdict of guilty on Counts Three to Sixteen, inclusive, and in due course the court entered judgment of conviction pursuant to the jury's verdict.

In seeking reversal defendant in substance contends: (1) the court erred in denying defendant's motion for a judgment of acquittal, (2) the comment of the court was not fair and impartial, but tended to stress only facts tending to prove defendant's guilt, (3) the court erred in its instruction given on circumstantial evidence, and (4) the court erred in taking away from the jury the issue of whether there was use of the mails by the court's comment, "So, I think that the element, the question of whether or not the mails were used, if you find there was a plan to cheat and defraud is present, in this case—however, that is yet a matter for you to determine."

■■■ The motion for acquittal having been denied, in considering the question of the sufficiency of the evidence to sustain the jury's verdict we must assume that all conflicts in the evidence were resolved by the jury in favor of the Government and we must view the evidence in a light most favorable to the Government, as it was the prevailing party, and as oft repeated in this court, the prevailing party is entitled to all such favorable inferences as may reasonably be drawn from the facts proven, and if, when so viewed, the evidence is such that reasonable minds "might differ", then the question as to the guilt or innocence of the defendant is one of fact to be found by the jury, and not one of law to be determined by the court. Marbs v. United States, 8 Cir., 250 F.2d 514; Connelly v. United States, 8 Cir., 249 F.2d 576; Brennan v. United States, 8 Cir., 240 F.2d 253; Peters v. United States, 8 Cir., 160 F.2d 319. It was incumbent upon the Government to prove to the satisfaction of the jury beyond a reasonable doubt a scheme to defraud and the use of the United States mails in furtherance of that scheme. There is little, if any, conflict in the evidence and the only substantial issue for determination was the intent of the defendant. While the defendant categorically testified that he acted in good faith in the transactions involved, the jury, being the sole judges of the credibility of all testimony, was not bound to believe this testimony and manifestly did not believe it, but from all the proven facts and circumstances found that the defendant acted fraudulently. Viewing the evidence in a light most favorable to the Government, the jury could reasonably have believed that defendant devised a scheme whereby certain moneys were collected on behalf of the defendant and his companies, in return for which certain items were to be published and delivered in accordance with the terms of contracts entered into

by the defendant and his companies with certain groups, organizations and schools. They could further have found that the items called for by said contracts were never delivered and that the money was appropriated for his use and benefit, contrary to the terms and conditions of the contracts. They could also have found that this scheme continued uninterrupted from the Summer of 1955 to April of 1958, and that it was interrupted at that time only by the action of creditors in attaching and closing his office and thereby putting him out of business. The jury would also have been warranted in finding that the defendant was experienced in the field of printing and publishing and that he was well aware of the mechanical and material requirements necessary to fulfill outstanding contracts, and that he knew that he did not possess the financial, mechanical or material requirements necessary to fulfill the outstanding contracts at any given time, but in spite of such knowledge on his part he continued to contract with other groups, organizations and individuals for the delivery of certain publications for which he received money. From all these facts and circumstances the jury might well have inferred that defendant did not act in good faith but acted with intent to defraud. There was some very indefinite testimony that some work had been done in fulfillment of each of the contracts. The evidence is lacking in persuasive force as it does not purport to show how much, if any, work was done on any particular contract. The jury might well have inferred that the work done, if any, was negligible, as it was within the power of the defendant to prove that substantial work had been done on these several contracts. Of course, the burden of proof was not upon him but, as he alone had the proof, it was proper for the jury to consider that he failed to produce it. There was, in our opinion, abundant evidence to warrant the jury in believing that the defendant acted with intent to defraud.

As to the sufficiency of the evidence on the question of the use of the United States mails in furtherance of defendant's scheme to defraud, the evidence stands without contradiction that, as to each count of the Indictment, the mails were so used. We conclude that the question of the defendant's guilt or innocence could not be determined as a matter of law but was a question of fact to be found by the jury and the court properly denied defendant's motion for judgment of acquittal interposed at the close of all the evidence.

■ It is next contended that defendant was denied a fair trial because the court unfairly commented on the evidence. Generally, the fairness of an instruction cannot be determined by considering segregated portions of the instructions out of context, but the instructions must be considered as a whole. Segal v. United States, 8 Cir., 246 F.2d 814; Rosenbloom v. United States, 8 Cir., 259 F.2d 500; Stoneking v. United States, 8 Cir., 232 F.2d 385; Buchanan v. United States, 8 Cir., 15 F.2d 496. In Federal courts, unlike the practice in most of the states, the judge may comment on the evidence, provided he does so fairly and impartially. This was the rule at common law at the time of the adoption of the Constitution and is often referred to as the English system. He is not a mere moderator or presiding officer but may even express an opinion as to the probative force of any testimony, or even as to the guilt or innocence of the defendant, provided that the jury be definitely instructed that they are not bound by the court's views but are the sole judges as to the facts. The judge must not become an advocate for either party and we have so held. Buchanan v. United States, supra; Callanan v. United States, 8 Cir., 223 F.2d 171; Myres v. United States, 8 Cir., 174 F.2d 329; McCoy v. Blakely, 8 Cir., 217 F.2d 227; Boatright v. United States, 8 Cir., 105 F.2d 737; Cook v. United States, 8 Cir., 18 F.2d 50; Rudd v. United States, 8

Cir., 173 F. 912. In Cook v. United States, supra, we said [18 F.2d 51]:

"This and other courts in numerous cases have had presented to them the question of alleged error in instructions of a trial court, where it was claimed on the one side that the language used was merely an expression of opinion on the evidence, and on the other, that the court assumed the position of an advocate and attempted to argue the case. No hard and fast rule can be laid down as to just how far a court may go. It is settled by practically all the decisions that the trial court may comment upon the evidence and express his opinion upon the facts, provided he is careful to see that the jury understands that their province of dealing with the fact questions involved is not invaded."

■ We have carefully considered the instructions as a whole and are of the view that the court did not become an advocate for the Government but fairly and impartially summarized the evidence and distinctly advised the jury some eight times during the course of the instructions that it was the jury's responsibility to determine the facts and specifically warned the jury as follows:

"* * * if, during the course of this charge, members of the jury, the Court should express any opinion concerning any factual situation, or if you feel that the Court has any opinion concerning the guilt or the innocence, or the value or the lack of value of any testimony, I want to say to you in all fairness and in all seriousness, that it is not binding upon you any more so than the expression of the opinion of a member of counsel in the case."

The contention is made that the court took from the jury the question as to whether the mails had been used in furtherance of defendant's scheme. This we think wholly without merit. The evidence in fact was without dispute that the mails had been used, and, in the sec-

ond place, the instruction left the matter to the decision of the jury.

■ It is finally argued that the court erred in its instructions on circumstantial evidence. In the course of its instruction on circumstantial evidence the court said:

"These inferences ought not, of course—need not inevitably follow, but they ought to reasonably follow the circumstances detailed in evidence. They ought to be consistent with each other, and inconsistent with the guilt of the defendant, and at the same time inconsistent with any reasonable hypothesis of the defendant's innocence."

The only objection interposed to this instruction was as follows:

"* * * And the defendant specifically objects and excepts to the refusal of the Court to give requested instructions—specifically objects to the giving by the Court of the instruction on 'circumstantial evidence' in that it does not correctly state the law, and the defendant specifically objects and excepts to the failure to give the instructions as submitted by the defendant on circumstantial evidence."

This objection did not point out or designate any particular error in the instruction but simply alleged that it did not correctly state the law. There was apparently a typographical error involving the use of the word "consistent". Had this error been called to the attention of the court, it could readily have been cured and one of the purposes of requiring objections to instructions to be interposed before the jury retires is to enable the court to correct the error, if any. Rule 30, Federal Rules of Criminal Procedure, Title 18, United States Code, provides in part that:

"* * * No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinct-

ly the matter to which he objects and the grounds of his objection."

Finnegan v. United States, 8 Cir., 204 F.2d 105; Hall v. Aetna Life Ins. Co., 8 Cir., 85 F.2d 447; Palmer v. Miller, 8 Cir., 145 F.2d 926; Eastman v. United States, 8 Cir., 153 F.2d 80; Bronstein v. United States, 8 Cir., 17 F.2d 12; Marbs v. United States, supra; McKenna v. United States, 8 Cir., 232 F.2d 431; Armstrong v. United States, 8 Cir., 228 F.2d 764. For the foregoing reasons the alleged error is not reviewable.

We have considered all other contentions urged by defendant for reversal and find them wholly without merit, and on the whole record we are convinced that defendant had a fair trial. The judgment appealed from is therefore affirmed.